## THE GUY C. GOSS.

### PUGET SOUND MACHINERY DEPOT v. THE GUY C. GOSS.

(District Court, D. Washington, N. D. December 19, 1892.)

#### No. 536.

1. ADMIRALTY—PRACTICE—MOTION TO DISMISS.
On reference of an admiralty cause to a commissioner to take and report the evidence, the libelant rested after examining three witnesses, and without giving notice of intention to offer further proof at a later stage. The claimant thereupon filed a motion to dismiss for want of evidence sufficient to sustain the libel, but, without waiting to submit the motion to the court, he proceeded before the commissioner to take evidence on his side, after notice that the motion was not waived. *Held*, that the claimant was entitled to have the case decided on the evidence of the first three witnesses, unaided by evidence adduced by libelant on cross-examination of claimant's witnesses or in rebuttal; no sufficient reason appearing for receiving such evidence out of time.

2. SHIPPING — CARRIAGE OF GOODS — LIABILITY FOR DAMAGE —PLEADING AND PROOF.
A libel charged that damage to a consignment of iron pipe, shipped under a bill of lading exempting the ship from liability "for leakage, breakage, or rust, except from improper stowage," was caused by bad stowage and negligence of the master and crew. It was proved by libelant that the goods were received in a damaged condition, and by claimant that the vessel was seaworthy at the time of sailing, that she made the passage in the usual time without developing any defect, that her pumps worked properly, and that the cargo was well stowed and properly dunnaged. Testimony that the pipe was rusted by sea water was given for libelant in rebuttal, by experts who knew nothing of the construction of the vessel, how the cargo was stowed, or how or when salt water could have come in contact with the pipe. *Held*, that the burden of proof rested upon libelant, and that the evidence was insufficient to sustain his libel.

In Admiralty. Suit by the Puget Sound Machinery Depot (a corporation) for damage by rust to a consignment of iron pipe, shipped from New York via Cape Horn to Seattle, on the bark Guy C. Goss. Dismissed.

Winsor & Farwell, for libelant.

W. H. Pritchard and John H. Elder, for claimant.

HANFORD, District Judge. The libel in this case charges that the pipe was so damaged when delivered as to be of no value whatever, and that the damage was caused by bad stowage, and negligence on the part of the master and crew, but fails to specify in what way the pipe was damaged,—whether by breakage, rust, or otherwise. The answer admits that the pipe was received by the ship in good order, but denies that it was damaged when delivered; denies all the allegations of negligence; and avers that the cargo was properly stowed and dunnaged. The case was, according to the practice in this court, referred to a commissioner to take and report the evidence.

The libelant produced as witnesses its president, secretary, and manager, and upon the testimony of these three rested. Said testimony as a whole is quite as vague and unsatisfactory as the libel. In substance it is that the pipe, when first examined after being discharged from the ship, was in bad condition. Mr. Thomas M. Greene, the secretary, estimates the total damage at $1,000. The others each say (referring to the entire consignment, as I assume) that it was damaged about $33\frac{1}{3}$ per cent. There is not a word in the testimony offered in behalf of the libelant in chief as to breakage or rust. No offer was made to give in detail any information as to the number of pieces that were found to be injured, nor as to the manner in which the damage was caused. Only from questions to the respondent's witnesses, and testimony introduced after the evidence for the defense had closed, does it appear that the libelant's grievance is on account of rust. No offer was made of evidence tending to prove that the vessel was unseaworthy, or that the cargo was not well stowed or not properly dunnaged, or that the master, mariners, or stevedores were guilty of any negligence; and the proctor for the libelant rested upon the meager testimony above summarized, without giving notice of an intention to offer further proof at a later stage of the case.

Thereupon the proctor for claimant filed with the commissioner a motion to dismiss for want of sufficient evidence to sustain the material allegations of the libel; but, without waiting to submit the motion to the court, the respondent proceeded before the commissioner with the taking of evidence on his side, after giving notice that the motion was not waived. The pipe was shipped under a contract containing a clause exempting the ship from liability for "leakage, breakage, or rust, except from improper stowage;" which contract is set forth in an exhibit attached to the libel. The voyage was not protracted beyond the time ordinarily required for sailing from New York to Puget sound. The vessel at the time of sailing was staunch and seaworthy, and made the passage without developing any defect or incapacity for transporting in safety the cargo which she carried. All necessary repairs occasioned by events of the voyage were promptly made. The pumps were worked regularly, and kept the water from accumulating in the ship. The evi-

dence on the part of the respondent is positive to the effect that the cargo was well stowed and properly dunnaged, and that in every way known to ship masters and stevedores the cargo was protected and made secure for the voyage.

In rebuttal the libelant introduced some expert evidence to the effect that, in the opinion of the witnesses, the character of the rust on the pipe indicated that it was caused by salt water. The proctors for the libelant appear to have a theory that the damage was caused by the blowing of bilge water through the air strip, but there is no evidence to support it; and there is in the case no testimony as to the cause of the rust, except mere conjectures of the witnesses. These who give opinions that salt water caused it know nothing about the construction of the ship, or the manner in which the cargo was stowed, or the occurrences of the voyage, and of course have no basis for an opinion as to how or when salt water could have come in contact with the pipe. Without better evidence than this, I cannot find that the rust was caused by "improper stowage," unseaworthiness of the ship, or negligence or unfaithfulness on the part of the master or any person in the service of the ship; and without evidence to support such findings the libelant cannot recover. Rust is a cause of deterioration inherent in the goods. In issuing the bills of lading care was taken to protect the ship from liability for damage from this cause not due to some act or omission or defect for which the owner, master, agent, or some person in the service of the ship might be held to be blameworthy. Therefore the burden of proof rests upon the libelant to show such blameworthy act, omission, or defect. Clark v. Barnwell, 12 How. 272; McKinlay v. Morrish, 21 How. 343; Transportation Co. v. Downer, 11 Wall. 129.

The rules of practice in admiralty, while flexible and liberal, require orderly procedure and fairness in the conduct of a cause. Additional evidence may be introduced at any stage of the case before a final decree is signed in the court of original jurisdiction, and even after an appeal, when a trial de novo is allowed in the appellate court, provided good cause be shown for not producing it at the proper time; but it cannot be received out of time, without a sufficient reason therefor appearing. Under this rule the claimant is entitled to have the case decided upon the evidence of the first three witnesses examined, unaided by the other evidence taken. It is my opinion, however, that the result must be the same whether all the evidence offered on both sides, or only that offered by the libelant in chief, be considered. Decree of dismissal.