# CROWELL, DEPUTY COMMISSIONER, *v.* BENSON.[*]

No. 19.   Argued October 20, 21, 1931.—Decided February 23, 1932.

---

[*] Together with No. 20, *Crowell, Deputy Commissioner, and Knudsen* v. *Benson.*

24

*Solicitor General Thacher,* with whom *Mr. Erwin N. Griswold* was on the brief, for Crowell, petitioner.

26

28

30

*Mr. Alexis T. Gresham,* with whom *Mr. Palmer Pillans* was on the brief, for Knudsen, petitioner.

32

*Mr. Harry T. Smith,* with whom *Mr. Vincent F. Kilborn* was on the brief, for respondent.

34

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This suit was brought in the District Court to enjoin the enforcement of an award made by petitioner Crowell, as deputy commissioner of the United States Employees' Compensation Commission, in favor of the petitioner Knudsen and against the respondent Benson. The award was made under the Longshoremen's and Harbor Workers' Compensation Act (Act of March 4, 1927, c. 509, 44 Stat. 1424; U. S. C. Tit. 33, §§ 901–950) and rested upon

the finding of the deputy commissioner that Knudsen was injured while in the employ of Benson and performing service upon the navigable waters of the United States. The complainant alleged that the award was contrary to law for the reason that Knudsen was not at the time of his injury an employee of the complainant and his claim was not ' within the jurisdiction ' of the deputy commissioner. An amended complaint charged that the Act was unconstitutional upon the grounds that it violated the due process clause of the Fifth Amendment, the provision of the Seventh Amendment as to trial by jury, that of the Fourth Amendment as to unreasonable search and seizure, and the provisions of Article III with respect to the judicial power of the United States. The District Judge denied motions to dismiss and granted a hearing *de novo* upon the facts and the law, expressing the opinion that the Act would be invalid if not construed to permit such a hearing. The case was transferred to the admiralty docket, answers were filed presenting the issue as to the fact of employment, and the evidence of both parties having been heard, the District Court decided that Knudsen was not in the employ of the petitioner and restrained the enforcement of the award. 33 F. (2d) 137; 38 F. (2d) 306. The decree was affirmed by the Circuit Court of Appeals, 45 F. (2d) 66, and this Court granted writs of certiorari. 283 U. S. 814.

The question of the validity of the Act may be considered in relation to (1) its provisions defining substantive rights and (2) its procedural requirements.

*First.* The Act has two limitations that are fundamental. It deals exclusively with compensation in respect of disability or death resulting " from an injury occurring upon the navigable waters of the United States " if recovery " through workmen's compensation proceedings

may not validly be provided by State law," and it applies only when the relation of master and servant exists. § 3.[1] " Injury," within the statute, " means accidental injury or death arising out of and in the course of employment," and the term " employer " means one " any of whose employees are employed in maritime employment, in whole or in part," upon such navigable waters. § 2 (2) (4). Employers are made liable for the payment to their employees of prescribed compensation " irrespective of· fault as a cause for the injury." § 4. The liability is exclusive, unless the employer fails to secure payment of the compensation. § 5. The employer is required to furnish appropriate medical and other treatment. § 7. The compensation for temporary or permanent disability, total or partial, according to the statutory classification, and in case of the death of the employee, is fixed, being based upon prescribed percentages of average weekly wages, and the persons to whom payments are to be made are designated. §§ 6, 8, 9, 10. Employers must secure the pay-

---

[1] Section three of the Act as to " Coverage " provides:

" Sec. 3. (a) Compensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

"(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof.

"(b) No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another."

ment of compensation by procuring insurance or by becoming self-insurers in the manner stipulated. § 32. Failure to provide such security is a misdemeanor. § 38.

As the Act relates solely to injuries occurring upon the navigable waters of the United States, it deals with the maritime law, applicable to matters that fall within the admiralty and maritime jurisdiction (Const. Art. III, § 2; *Nogueira* v. *N. Y., N. H. & H. R. Co.*, 281 U. S. 128, 138); and the general authority of the Congress to alter or revise the maritime law which shall prevail throughout the country is beyond dispute.[2] In limiting the application of the Act to cases where recovery " through workmen's compensation proceedings may not validly be provided by State law," the Congress evidently had in view the decisions of this Court with respect to the scope of the exclusive authority of the national legislature.[3] The pro-

---

[2] *Waring* v. *Clarke*, 5 How. 441, 457, 458; *The Lottawanna*, 21 Wall. 558, 577; *Butler* v. *Boston & Savannah Steamship Co.*, 130 U. S. 527, 556, 557; *In re Garnett*, 141 U. S. 1, 14; *The Hamilton*, 207 U. S. 398, 404; *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 62; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 214, 215; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 160; *Washington* v. *Dawson*, 264 U. S. 219, 227, 228; *Panama R. Co.* v. *Johnson*, 264 U. S. 375, 386, 388.

Important illustrations of the exercise of this authority are the Limitation of Liability Act of 1851 (9 Stat. 635; *Hartford Accident & Indemnity Co.* v. *Southern Pacific Co.*, 273 U. S. 207, 213–215)[1]; the Seamen's Act of 1915 (38 Stat. 1185; *Chelentis* v. *Luckenbach Steamship Co.*, 247 U. S. 372, 381, 384); the Ship Mortgage Act of 1920 (41 Stat. 1000; *Morse Drydock & Repair Co.* v. *Northern Star*, 271 U. S. 552, 555, 556); and the Merchant Marine Act of 1920, incorporating, in relation to seamen, the Federal Employers' Liability Act into the maritime law of the United States (41 Stat. 1007; *Panama R. Co.* v. *Johnson, supra; Engel* v. *Davenport*, 271 U. S. 33, 35; *Panama R. Co.* v. *Vasquez*, 271 U. S. 557, 559, 560; *Northern Coal Co.* v. *Strand*, 278 U. S. 142, 147). See U. S. C., Titles 33 and 46.

[3] *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Washington* v. *Dawson*, 264 U. S. 219;

priety of providing by Federal statute for compensation of employees in such cases had been expressly recognized by this Court,[4] and within its sphere the statute was designed to accomplish the same general purpose as the workmen's compensation laws of the States.[5] In de-

*Robins Dry Dock & Repair Co.* v. *Dahl,* 266 U. S. 449. For decisions since the passage of the Act in question, see *Messel* v. *Foundation Co.,* 274 U. S. 427; *Northern Coal & Dock Co.* v. *Strand,* 278 U. S. 142; *London Guarantee & Accident Co.* v. *Industrial Commission,* 279 U. S. 109, 125; *Baizley Iron Works* v. *Span,* 281 U. S. 222.

The application of State Workmen's Compensation Acts has been sustained where the work of the employee has been deemed to have no direct relation to navigation or commerce and the operation of the local law " would work no material prejudice to the essential features of the general maritime law." *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 242; *Grant Smith-Porter Co.* v. *Rohde,* 257 U. S. 469, 477; *Millers' Indemnity Underwriters* v. *Braud,* 270 U. S. 59, 64; *Sultan Railway & Timber Co.* v. *Department of Labor,* 277 U. S. 135, 137; *Baizley Iron Works* v. *Span, supra,* at pp. 230, 231. See, also, *Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109.

[4] *Washington* v. *Dawson,* 264 U. S. 219, 227, where the Court said " Without doubt Congress has power to alter, amend or revise the maritime law by statutes of general application embodying its will and judgment. This power, we think, would permit enactment of a general employers' liability law or general provisions for compensating injured employees; but it may not be delegated to the several States." .

[5] The Committee on the Judiciary of the Senate, in reporting upon the proposed measure, said (Sen. Rep. No. 973, 69th Cong., 1st sess., p. 16):

" The committee deems it unnecessary to comment upon the modern change in the relation between employers and employees establishing systems of compensation as distinguished from liability. Nearly every State in the Union has a compensation law through which employees are compensated for injuries occurring in the course of their employment without regard to negligence on the part of the employer or contributory negligence on the part of the employee. If longshoremen could avail themselves of the benefits of State compensation laws, there would be no occasion for this legislation; but, unfortunately, they are excluded from these laws by reason of the character of their employment; and they are not only excluded but

fining substantive rights, the Act provides for recovery in the absence of fault, classifies disabilities resulting from injuries, fixes the range of compensation in case of disability or death, and designates the classes of beneficiaries. In view of Federal power to alter and revise the maritime law, there appears to be no room for objection on constitutional grounds to the creation of these rights, unless it can be found in the due process clause of the Fifth Amendment. But it cannot be said that either the classifications of the statute or the extent of the compensation provided are unreasonable. In view of the difficulties which inhere in the ascertainment of actual damages, the Congress was entitled to provide for the payment of amounts which would reasonably approximate the probable damages. See *Chicago, B. & Q. R. Co.* v. *Cram*, 228 U. S. 70, 84; compare *Missouri Pacific Ry. Co.* v. *Tucker*, 230 U. S. 340, 348. Liability without fault is not unknown to the maritime law,[6] and,

---

the Supreme Court has more than once held that Federal legislation can not, constitutionally, be enacted that will apply State laws to this occupation. (*Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Washington* v. *Dawson & Co.*, 264 U. S. 219.)"

The House Committee in its report made the following statement (House Rep. No. 1767, 69th Cong., 2d sess., p. 20):

" The principle of workmen's compensation has become so firmly established that simple justice would seem to require that this class of maritime workers should be included in this legislation. . . .

" The bill as amended, therefore, will enable Congress to discharge its obligation to the maritime workers placed under their jurisdiction by the Constitution of the United States by providing for them a law whereby they may receive the benefits of workmen's compensation and thus afford them the same remedies that have been provided by legislation for those killed or injured in the course of their employment in nearly every State in the Union."

[6] See, *e. g.*, *The Osceola*, 189 U. S. 158, 169; *The Iroquois*, 194 U. S. 240, 241, 242. In *Chicago, R. I. & P. R. Co.* v. *Zernecke*, 183 U. S. 582, 586, the Court said: " Our jurisprudence affords examples of legal liability without fault, and the deprivation of property without

apart from this fact, considerations are applicable to the substantive provisions of this legislation, with respect to the relation of master and servant, similar to those which this Court has found sufficient to sustain workmen's compensation laws of the States against objections under the due process clause of the Fourteenth Amendment. *New York Central R. Co.* v. *White,* 243 U. S. 188; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219; *Ward & Gow* v. *Krinsky,* 259 U. S. 503; *Lower Vein Coal Co.* v. *Industrial Board,* 255 U. S. 144; *Madera Sugar Pine Co.* v. *Industrial Accident Comm.,* 262 U. S. 499, 501, 502; *Sheehan Co.* v. *Shuler,* 265 U. S. 371; *Dahlstrom Metallic Door Co.* v. *Industrial Board,* 284 U. S. 594. See *Nogueira* v. *N. Y., N. H. & H. R. Co., supra,* at pp. 136, 137.

*Second.* The objections to the procedural requirements of the Act relate to the extent of the administrative authority which it confers. The administration of the Act— ' except as otherwise specifically provided '—was given to the. United States Employees' Compensation Commission,[7] which was authorized to establish compensation districts, appoint deputy commissioners, and make regulations. §§ 39, 40. Claimants must give written notice to the deputy commissioner and to the employer of the injury or death within thirty days thereafter; the deputy commissioner may excuse failure to give such notice for satisfactory reasons. § 12. If the employer contests the right to compensation, he is to file notice to that effect. § 14 (d). A claim for compensation must be filed with

fault being attributable to its owner. The law of deodands was such an example. The personification of the ship in admiralty law is another." See Holmes, "The Common Law," pp. 26–29; *The China,* 7 Wall. 53, 67, 68; *Sherlock* v. *Alling,* 93 U. S. 99, 105–108; *Homer Ramsdell Co.* v. *Compagnie Générale Transatlantique,* 182 U. S. 406, 413, 414. As to the basis of general average contribution, see *Ralli* v. *Troop,* 157 U. S. 386, 394, 395.

[7] This Commission was created by the Act of September 7, 1916, c. 458, § 28, 39 Stat. 748; U. S. C., Tit. 5, § 778.

the deputy commissioner within a prescribed period, and it is provided that the deputy commissioner shall have full authority to hear and determine all questions in respect to the claim. §§ 13, 19 (a). Within ten days after the claim is filed, the deputy commissioner, in accordance with regulations prescribed by the Commission, must notify the employer and any other person who is considered by the deputy commissioner to be an interested party. The deputy commissioner is required to make, or cause to be made, such investigations as he deems to be necessary and upon application of any interested party must order a hearing, upon notice, at which the claimant and the employer may present evidence. Employees claiming compensation must submit to medical examination. § 19. In conducting investigations and hearings, the deputy commissioner is not bound by common law or statutory rules of evidence, or by technical or formal rules of procedure, except as the Act provides, but he is to proceed in such manner " as to best ascertain the rights of the parties." § 23 (a). He may issue subpœnas, administer oaths, compel the attendance and testimony of witnesses, the production of documents or other evidence or the taking of depositions, and may do all things conformable to law which may be necessary to enable him effectively to discharge his duties. Proceedings may be brought before the appropriate Federal court to punish for misbehavior or contumacy as in case of contempt. § 27. Hearings before the deputy commissioner are to be public and reported stenographically, and the Commission is to provide by regulation for the preparation of a record. § 23 (b).[8] Compensation orders are to be filed in the office of the deputy commissioner, and copies must be sent

---

[8] In the regulations promulgated by the Commission in the form of instructions to deputy commissioners, provision was made for findings of fact. Report, United States Employees' Compensation Commission, for fiscal year ending June 30, 1930, p. 64. See *Howard* v. *Monahan*, 33 F. (2d) 220.

to the claimant and employer. § 19. The Act provides that it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of the Act, that sufficient notice of claim has been given, that the injury was not occasioned solely by the intoxication of the injured employee, or by the willful intention of such employee to injure or kill himself or another. § 20. A compensation order becomes effective when filed, and unless proceedings are instituted to suspend it or set it aside, it becomes final at the expiration of thirty days. § 21 (a). If there is a change in conditions, the order may be modified or a new order made. § 22. In case of default for thirty days in the payment of compensation, application may be made to the deputy commissioner for a supplementary order declaring the amount in default. Such an order is to be made after investigation, notice and hearing, as in the case of claims. Upon filing a certified copy of the supplementary order with the clerk of the Federal court, as stated, judgment is to be entered for the amount declared in default, if such supplementary order "is in accordance with law." Review of the judgment may be had as in civil suits for damages at common law and the judgment may be enforced by writ of execution. § 18.

The Act further provides that if a compensation order is "not in accordance with law," it "may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest" against the deputy commissioner making the order and instituted in the Federal district court for the judicial district in which the injury occurred.[9] Payment is not to be stayed pending such proceedings unless, on hearing after notice, the court allows the stay on evi-

---

[9] In the District of Columbia, the proceedings are to be instituted in the Supreme Court of the District.

dence showing that the employer would otherwise suffer irreparable damage. § 21 (b). Beneficiaries of awards, or the deputy commissioner, may apply for enforcement to the Federal district court and, if the court determines that the order "was made and served in accordance with law," obedience may be compelled by writ of injunction or other proper process. § 21 (c).[10]

As the claims which are subject to the provisions of the Act are governed by the maritime law as established by the Congress and are within the admiralty jurisdiction, the objection raised by the respondent's pleading as to the right to a trial by jury under the Seventh Amendment is unavailing (*Waring* v. *Clarke*, 5 How. 441, 459, 460); and that under the Fourth Amendment is neither explained nor urged. The other objections as to procedure invoke the due process clause and the provision as to the judicial power of the United States.

(1) The contention under the due process clause of the Fifth Amendment relates to the determination of questions of fact. Rulings of the deputy commissioner upon questions of law are without finality. So far as

---

[10] The United States Employees' Compensation Commission estimates that the number of employees who at times are engaged in employments covered by the Act is in excess of 300,000. Report for fiscal year ending June 30, 1931, p. 66. The Commission states that 138,788 cases have been closed during the four years that the law has been in operation. *Id.*, p. 69. During the last fiscal year the injuries reported under the Act numbered 28,861, of which 156 were 'fatal' cases. The total number of cases disposed of during that year, including those brought forward from the preceding years, was 30,489, of which there were 13,261 'non-fatal' cases which caused no loss of time, and 4,067 of such cases in which the duration of disability did not exceed seven days. Compensation payments were completed in 11,776 cases. Hearings held by deputy commissioners during the fiscal year number 1,217, of which 905 involved compensation payments. At the end of the fiscal year, there were 102 cases pending in federal district courts wherein the plaintiffs asked review of compensation orders. *Id.*, 68–70.

the latter are concerned, full opportunity is afforded for their determination by the Federal courts through proceedings to suspend or to set aside a compensation order, § 21 (b), by the requirement that judgment is to be entered on a supplementary order declaring default only in case the order follows the law (§ 18), and by the provision that the issue of injunction or other process in a proceeding by a beneficiary to compel obedience to a compensation order is dependent upon a determination by the court that the order was lawfully made and served. § 21 (c). Moreover, the statute contains no express limitation attempting to preclude the court, in proceedings to set aside an order as not in accordance with law, from making its own examination and determination of facts whenever that is deemed to be necessary to enforce a constitutional right properly asserted. See *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287, 289; *Ng Fung Ho* v. *White,* 259 U. S. 276, 284, 285; *Prendergast* v. *New York Telephone Co.,* 262 U. S. 43, 50; *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 443, 444; *Phillips* v. *Commissioner,* 283 U. S. 589, 600. As the statute is to be construed so as to support rather than to defeat it, no such limitation is to be implied. *Panama Railroad Co.* v. *Johnson,* 264 U. S. 375, 390.

Apart from cases involving constitutional rights to be appropriately enforced by proceedings in court, there can be no doubt that the Act contemplates that, as to questions of fact arising with respect to injuries to employees within the purview of the Act, the findings of the deputy commissioner, supported by evidence and within the scope of his authority, shall be final. To hold otherwise would be to defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task.

The object is to secure within the prescribed limits of the employer's liability an immediate investigation and a sound practical judgment, and the efficacy of the plan depends upon the finality of the determinations of fact with respect to the circumstances, nature, extent and consequences of the employee's injuries and the amount of compensation that should be awarded. And this finality may also be regarded as extending to the determination of the question of fact whether the injury " was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another." While the exclusion of compensation in such cases is found in what are called " coverage " provisions of the Act (§ 3), the question of fact still belongs to the contemplated routine of administration, for the case is one of employment within the scope of the Act and the cause of the injury sustained by the employee as well as its character and effect must be ascertained in applying the provisions for compensation. The use of the administrative method for these purposes, assuming due notice, proper opportunity to be heard, and that findings are based upon evidence, falls easily within the principle of the decisions sustaining similar procedure against objections under the due process clauses of the Fifth and Fourteenth Amendments.[11]

The statute provides for notice and hearing; and an award made without proper notice, or suitable opportu-

---

[11] *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 685, 695; *Crane* v. *Hahlo,* 258 U. S. 142, 147; *Federal Trade Comm.* v. *Curtis Publishing Co.,* 260 U. S. 568, 580; *Silberschein* v. *United States,* 266 U. S. 221, 225; *Virginian Ry. Co.* v. *United States,* 272 U. S. 658, 663; *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 442; *International Shoe Co.* v. *Federal Trade Comm.,* 280 U. S. 291, 297; *Dohany* v. *Rogers,* 281 U. S. 362, 369; *Phillips* v. *Commissioner,* 283 U. S. 589, 600. See, also, *Hardware Dealers Mutual Fire Ins. Co.* v. *Glidden,* 284 U. S. 151; *New York Central R. R. Co.* v. *White, supra,* at pp. 194, 207, 208; *Mountain Timber Co.* v. *Washington, supra,* at p. 233.

48

nity to be heard, may be attacked and set aside as without validity. The objection is made that, as the deputy commissioner is authorized to prosecute such inquiries as he may consider necessary, the award may be based wholly or partly upon an *ex parte* investigation and upon unknown sources of information, and that the hearing may be merely a formality. The statute, however, contemplates a public hearing and regulations are to require " a record of the hearings and other proceedings before the deputy commissioner." § 23 (b). This implies that all proceedings by the deputy commissioner upon a particular claim shall be appropriately set forth, and that whatever facts he may ascertain and their sources shall be shown in the record and be open to challenge and opposing evidence. Facts conceivably known to the deputy commissioner, but not put in evidence so as to permit scrutiny and contest, will not support a compensation order. *Interstate Commerce Commission* v. *Louisville & Nashville R. Co.,* 227 U. S. 88, 93; *The·Chicago Junction Case,* 264 U. S. 258, 263; *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 288. An award not supported by evidence in the record is not in accordance with law. But the fact that the deputy commissioner is not bound by the rules of evidence which would be applicable to trials in court or by technical rules of procedure, § 23 (a), does not invalidate the proceeding, provided substantial rights of the parties are not infringed. *Interstate Commerce Comm.* v. *Baird,* 194 U. S. 25, 44; *Interstate Commerce Comm.* v. *Louisville & Nashville R. Co., supra; Spiller* v. *Atchison, T. & S. F. Ry. Co.,* 253 U. S. 117, 131; *United States* v. *Abilene & Southern Ry. Co., supra; Tagg Bros. & Moorhead* v. *United States, supra,* at p. 442.

(2) The contention based upon the judicial power of the United States, as extended " to all cases of admiralty

and maritime jurisdiction" (Const. Art. III), presents a distinct question. In *Murray's Lessee* v. *Hoboken Land and Improvement Co.*, 18 How. 272, 284, this Court, speaking through Mr. Justice Curtis, said: "To avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination."

The question in the instant case, in this aspect, can be deemed to relate only to determinations of fact. The reservation of legal questions is to the same court that has jurisdiction in admiralty, and the mere fact that the court is not described as such is unimportant. Nor is the provision for injunction proceedings, § 21(b), open to objection. The Congress was at liberty to draw upon another system of procedure to equip the court with suitable and adequate means for enforcing the standards of the maritime law as defined by the Act. *The Genesee Chief,* 12 How. 443, 459, 460. Compare *Panama R. Co.* v. *Johnson, supra,* at p. 388. By statute and rules, courts of admiralty may be empowered to grant injunctions, as in the case of limitation of liability proceedings. *Hartford Accident & Indemnity Co.* v. *Southern Pacific Co.,* 273 U. S. 207, 218. See, also, *Marine Transit Corporation* v. *Dreyfus,* 284 U. S. 263. The Congress did not attempt to define questions of law, and the generality of the description leaves no doubt of the intention to reserve to the Federal court full authority to pass upon all matters which this Court had held to fall within that category. There is thus no attempt to interfere with, but rather provision is made to facilitate, the exercise by the court of its jur-

isdiction to deny effect to any administrative finding which is without evidence, or ' contrary to the indisputable character of the evidence,' or where the hearing is ' inadequate,' or ' unfair,' or arbitrary in any respect. *Interstate Commerce Comm.* v. *Louisville R. Co., supra,* at pp. 91, 92; *Tagg Bros. & Moorhead* v. *United States, supra.*

As to determinations of fact, the distinction is at once apparent between cases of private right and those which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments. The Court referred to this distinction in *Murray's Lessee* v. *Hoboken Land and Improvement Co., supra,* pointing out that " there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." Thus the Congress, in exercising the powers confided to it, may establish ' legislative ' courts (as distinguished from ' constitutional courts in which the judicial power conferred by the Constitution can be deposited ') which are to form part of the government of territories or of the District of Columbia,[12] or to serve as special tribunals " to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it." But " the mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals." *Ex*

[12]*American Insurance Co.* v. *Canter,* 1 Pet. 511, 546; *Keller* v. *Potomac Electric Power Co.,* 261 U. S. 428, 442–444; *Postum Cereal Co.* v. *California Fig Nut Co.,* 272 U. S. 693, 700.

*parte Bakelite Corp.*, 279 U. S. 438, 451. Familiar illustrations of administrative agencies created for the determination of such matters are found in connection with the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health, the facilities of the post office, pensions and payments to veterans.[13]

The present case does not fall within the categories just described but is one of private right, that is, of the liability of one individual to another under the law as defined. But in cases of that sort, there is no requirement that, in order to maintain the essential attributes of the judicial power, all determinations of fact in constitutional courts shall be made by judges. On the common law side of the Federal courts, the aid of juries is not only deemed appropriate but is required by the Constitution itself. In cases of equity and admiralty, it is historic practice to call to the assistance of the courts, without the consent of the parties, masters and commissioners or assessors, to pass upon certain classes of questions, as, for example, to take and state an account or to find the amount of damages. While the reports of masters and commissioners in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law,[14]

---

[13] *Virginian Ry. Co.* v. *United States, supra; Tagg Bros. & Moorhead* v. *United States, supra; International Shoe Co.* v. *Federal Trade Comm., supra; Phillips* v. *Commissioner, supra; United States* v. *Ju Toy*, 198 U. S. 253, 263; *United States* v. *Babcock*, 250 U. S. 328, 331; *Burfenning* v. *Chicago, St. P., M. & O. Ry. Co.*, 163 U. S. 321, 323; *Bates & Guild Co.* v. *Payne*, 194 U. S. 106, 109; *Houston* v. *St. Louis Packing Co.*, 249 U. S. 479, 484; *Passavant* v. *United States*, 148 U. S. 214, 219; *Silberschein* v. *United States*, 266 U. S. 221, 225.

[14] As to masters in chancery, see *Tilghman* v. *Proctor*, 125 U. S. 136, 149, 150; *Callaghan* v. *Myers*, 128 U. S. 617, 666, 667; *Kimberly* v. *Arms*, 129 U. S. 512, 523, 524; *Davis* v. *Schwartz*, 155 U. S. 631, 636.

As to commissioners in admiralty, see *The Cayuga* (C. C. A. 6th), 59 Fed. 483, 488; *La Bourgogne* (C. C. A. 2nd), 144 Fed. 781, 782,

and the parties have no right to demand that the court shall redetermine the facts thus found. In admiralty, juries were anciently in use not only in criminal cases but apparently in civil cases also.[15] The Act of February 26, 1845 (c. 20, 5 Stat. 726), purporting to extend the admiralty jurisdiction of the Federal district courts to certain cases arising on the Great Lakes, gave the right " to trial by jury of all facts put in issue in such suits, where either party shall require it." After the decision in the case of *The Genesee Chief, supra,* holding that the Federal district courts possessed general jurisdiction in admiralty over the lakes, and navigable waters connecting them, under the Constitution and the Judiciary Act of 1789 (c. 20, § 9, 1 Stat. pp. 76, 77), this Court regarded the enabling Act of 1845 as " obsolete and of no effect, with the exception of the clause which gives to either party the right of trial by jury when requested." *The Eagle,* 8 Wall. 15, 25. And this provision, the court said, was " rather a mode of exercising jurisdiction than any substantial part of it." See R. S. 566, U. S. C., Tit. 28, § 770.[16] Chief Justice Taney, in delivering the opinion of the Court in the case of *The Genesee Chief, supra,* referring to this requirement, thus broadly stated the authority of Congress to change the procedure in courts of admiralty:

---

783; *The North Star* (C. C. A. 2nd), 151 Fed. 168, 177; *Western Transit Co.* v. *Davidson S. S. Co.* (C. C. A. 6th), 212 Fed. 696, 701; *P. Stanford Ross, Inc.,* v. *Public Service Corp.* (C. C. A. 3d), 42 Fed. (2d) 79, 80.

[15] 4 Chr. Robinson's Admiralty Reports, p. 74, note; Black Book of the Admiralty, Twiss' ed., vol. 1, pp. 49, 53, 245; 1 Abbott on Shipping, 5th Am. ed., pp. 283, 284; 1 Benedict's Admiralty, 5th ed., p. 304, note.

[16] As to the effect of the verdict of the jury in such cases, see *The Western States,* 159 Fed. 354, 358, 359; *Sweeting* v. *The Western States,* 210 U. S. 433; *The Nyack,* 199 Fed. 383, 389; 1 Benedict's Admiralty, 5th ed., p. 305.

"The power of Congress to change the mode of proceeding in this respect in its courts of admiralty, will, we suppose,.hardly be questioned. The Constitution declares that the judicial power of the United States shall extend to 'all cases of admiralty and maritime jurisdiction.' But it does not direct that the court shall proceed according to ancient and established forms, or shall adopt any other form or mode of practice. The grant defines the subjects to which the jurisdiction may be extended by Congress. But the extent of the power as well as the mode of proceeding in which that jurisdiction is to be exercised, like the power and practice in all the other courts of the United States, are subject to the regulation of Congress, except where that power is limited by the terms of the Constitution, or by necessary implication from its language. In admiralty and maritime cases there is no such limitation as to the mode of proceeding, and Congress may therefore in cases of that description, give either party right of trial by jury, or modify the practice of the court in any other respect that it deems more conducive to the administration of justice."

It may also be noted that while on an appeal in admiralty cases "the facts as well as the law would be subjected to review and retrial," this Court has recognized the power of the Congress "to limit the effect of an appeal to a review of the law as applicable to facts finally determined below." *The Francis Wright,* 105 U. S. 381, 386; *The Connemara,* 108 U. S. 352, 359. Compare *Luckenbach S. S. Co.* v. *United States,* 272 U. S. 533, 536, 537.

In deciding whether the Congress, in enacting the statute under review, has exceeded the limits of its authority to prescribe procedure in cases of injury upon navigable waters, regard must be had, as in other cases where constitutional limits are invoked, not to mere matters of form but to the substance of what is required.

The statute has a limited application, being confined to the relation of master and servant, and the method of determining the questions of fact, which arise in the routine of making compensation awards to employees under the Act, is necessary to its effective enforcement. The Act itself, where it applies, establishes the measure of the employer's liability, thus leaving open for determination the questions of fact as to the circumstances, nature, extent and consequences of the injuries sustained by the employee for which compensation is to be made in accordance with the prescribed standards. Findings of fact by the deputy commissioner upon such questions are closely analogous to the findings of the amount of damages that are made, according to familiar practice, by commissioners or assessors; and the reservation of full authority to the court to deal with matters of law provides for the appropriate exercise of the judicial function in this class of cases. For the purposes stated, we are unable to find any constitutional obstacle to the action of the Congress in availing itself of a method shown by experience to be essential in order to apply its standards to the thousands of cases involved, thus relieving the courts of a most serious burden while preserving their complete authority to insure the proper application of the law.

(3) What has been said thus far relates to the determination of claims of employees within the purview of the Act. A different question is presented where the determinations of fact are fundamental or ' jurisdictional,' [17] in the sense that their existence is a condition precedent to the operation of the statutory scheme. These funda-

---

[17] The term ' jurisdictional,' although frequently used, suggests analogies which are not complete when the reference is to administrative officials or bodies. See *Interstate Commerce Commission* v. *Humboldt Steamship Co.*, 224 U. S. 474, 484. In relation to administrative agencies, the question in a given case is whether it falls within the scope of the authority validly conferred.

mental requirements are that the injury occur upon the navigable waters of the United States and that the relation of master and servant exist. These conditions are indispensable to the application of the statute, not only because the Congress has so provided explicitly (§ 3), but also because the power of the Congress to enact the legislation turns upon the existence of these conditions.

In amending and revising the maritime law,[18] the Congress cannot reach beyond the constitutional limits which are inherent in the admiralty and maritime jurisdiction.[19] Unless the injuries to which the Act relates occur upon the navigable waters of the United States, they fall outside that jurisdiction.[20] Not only is navigability itself a question of fact, as waters that are navigable in fact are navigable in law,[21] but, where navigability is not in dispute, the locality of the injury, that is, whether it has occurred upon the navigable waters of the United States, determines the existence of the congressional power to create the liability prescribed by the statute.[22]   Again, it

[18] This power is distinct from the authority to regulate interstate or foreign commerce and is not limited to cases arising in that commerce. *The Genesee Chief*, 12 How. 443, 452; *The Commerce*, 1 Black 574, 578, 579; *The Belfast*, 7 Wall. 624, 640, 641; *Ex parte Boyer*, 109 U. S. 629, 632; *In re Garnett*, 141 U. S. 1, 15, 17; *London Guarantee & Accident Co.* v. *Industrial Comm.*, 279 U. S. 109, 124.

[19] *The Belfast, supra; Panama R. Co.* v. *Johnson, supra; The Genesee Chief, supra,* at p. 459; 1 Benedict's Admiralty, 5th ed., § 32, p. 47.

[20] *Cleveland Terminal & V. R. Co.* v. *Cleveland Steamship Co.*, 208 U. S. 316; *Atlantic Transport Co.* v. *Imbrovek, supra,* at pp. 59, 60; *Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263, 273; *Washington* v. *Dawson, supra,* at pp. 227, 235; *Nogueira* v. *N. Y., N. H. & H. R. Co.*, 281 U. S. 128, 133, 138.

[21] *The Daniel Ball,* 10 Wall. 557, 563; *United States* v. *Holt State Bank,* 270 U. S. 49, 56; *United States* v. *Utah,* 283 U. S. 64, 76, 77; *Arizona* v. *California,* 283 U. S. 423, 452.

[22] *Industrial Commission* v. *Nordenholt Co., supra; Washington* v. *Dawson, supra; Nogueira* v. *N. Y., N. H. & H. R. Co., supra;* 1 Benedict's Admiralty, 5th ed., § 29, pp. 41, 42, note.

cannot be maintained that the Congress has any general authority to amend the maritime law so as to establish liability without fault in maritime cases regardless of particular circumstances or relations. It is unnecessary to consider what circumstances or relations might permit the imposition of such a liability by amendment of the maritime law, but it is manifest that some suitable selection would be required. In the present instance, the Congress has imposed liability without fault only where the relation of master and servant exists in maritime employment and, while we hold that the Congress could do this, the fact of that relation is the pivot of the statute and, in the absence of any other justification, underlies the constitutionality of this enactment. If the person injured was not an employee of the person sought to be held, or if the injury did not occur upon the navigable waters of the United States, there is no ground for an assertion that the person against whom the proceeding was directed could constitutionally be subjected, in the absence of fault upon his part, to the liability which the statute creates.

In relation to these basic facts, the question is not the ordinary one as to the propriety of provision for administrative determinations. Nor have we simply the question of due process in relation to notice and hearing. It is rather a question of the appropriate maintenance of the Federal judicial power in requiring the observance of constitutional restrictions. It is the question whether the Congress may substitute for constitutional courts, in which the judicial power of the United States is vested, an administrative agency—in this instance a single deputy commissioner [23]—for the final determination of the existence of the facts upon which the enforcement of the constitutional rights of the citizen depend. The recognition of

[23] See Report of United States Employees' Compensation Commission for fiscal year ending June 30, 1931, pp. 108, 109.

the utility and convenience of administrative agencies for the investigation and finding of facts within their proper province, and the support of their authorized action, does not require the conclusion that there is no limitation of their use, and that the Congress could completely oust the courts of all determinations of fact by vesting the authority to make them with finality in its own instrumentalities or in the Executive Department. That would be to sap the judicial power as it exists under the Federal Constitution, and to establish a government of a bureaucratic character alien to our system, wherever fundamental rights depend, as not infrequently they do depend, upon the facts, and finality as to facts becomes in effect finality in law.

In this aspect of the question, the irrelevancy of State statutes and citations from State courts as to the distribution of State powers is apparent. A State may distribute its powers as it sees fit, provided only that it acts consistently with the essential demands of due process and does not transgress those restrictions of the Federal Constitution which are applicable to State authority.[24] In relation to the Federal government, we have already noted the inappositeness to the present inquiry of decisions with respect to determinations of fact, upon evidence and within the authority conferred, made by administrative agencies which have been created to aid in the performance of governmental functions and where the mode of determination is within the control of the Congress; as, *e. g.* in the proceedings of the Land Office pursuant to provisions for the disposition of public lands, of the authorities of the Post Office in relation to postal privileges, of the Bureau of Internal Revenue with respect to taxes, and of the Labor Department as to the

---

[24] *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 225; *Chicago, Rock Island & Pacific Ry. Co.* v. *Cole,* 251 U. S. 54, 56; *Missouri ex rel. Hurwitz* v. *North,* 271 U. S. 40, 42.

admission and deportation of aliens. *Ex parte Bakelite Corp., supra.*[25] Similar considerations apply to decisions with respect to determinations of fact by boards and commissions created by the Congress to assist it in its legislative process' in governing various transactions subject to its authority, as `for example, the rates and practices of interstate carriers, the legislature thus being able to apply its standards to a host of instances which it is impracticable to consider and legislate upon directly and the action being none the less legislative in character. because taken through a subordinate body.[26] And where administrative bodies have been appropriately created to meet the exigencies of certain classes of cases and their action is of a judicial character, the question of the conclusiveness of their administrative findings of fact generally arises where the facts are clearly not jurisdictional[27] and the scope of review as to such facts has been determined by the applicable legislation. None of the decisions of this sort touch the question which is presented where the facts involved are jurisdictional[28] or where the question concerns the proper exercise of the judicial power of the United States in enforcing constitutional limitations.

Even where the subject lies within the general authority of the Congress, the propriety of a challenge by judicial proceedings of the determinations of fact deemed to be jurisdictional, as underlying the authority of executive officers, has been recognized. When proceedings are taken against a person under the military law, and enlistment is denied, the issue has been tried and determined *de novo* upon *habeas corpus. In re Grimley,* 137 U. S. 147, 154,

---

[25] *Supra,* note 13.

[26] See *Arizona Grocery Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 284 U. S. 370.

[27] Freund, "Administrative Powers Over Persons and Property," § 154, p. 293.

[28] *Id.,* § 153, pp. 291–293.

155. See, also, *In re Morrissey*, 137 U. S. 157, 158; *Givens* v. *Zerbst*, 255 U. S. 11, 20. While, in the administration of the public land system, questions of fact are for the consideration and judgment of the Land Department and its decision of such questions is conclusive, it is equally true that if lands "never were public property, or had previously been disposed of, or if Congress had made no provision for their sale, or had reserved them, the department would have no jurisdiction to transfer them." This Court has held that "matters of this kind, disclosing a want of jurisdiction, may be considered by a court of law. In such cases the objection to the patent reaches beyond the action of the special tribunal, and goes to the existence of a subject upon which it was competent to act." *Smelting Co.* v. *Kemp*, 104 U. S. 636, 641. In such a case, the invalidity of the patent may be shown in a collateral proceeding. *Polk* v. *Wendell*, 9 Cranch 87; *Patterson* v. *Winn*, 11 Wheat. 380; *Minter* v. *Crommelin*, 18 How. 87; *Morton* v. *Nebraska*, 21 Wall. 660, 675; *Noble* v. *Union River Logging Co.*, 147 U. S. 165, 174. The question whether a publication is a 'book' or a 'periodical' has been reviewed upon the evidence received in a suit brought to restrain the Postmaster General from acting beyond his authority in excluding the publication from carriage as second class mail matter. *Smith* v. *Hitchcock*, 34 App. D. C., 521, 530–533; 226 U. S. 54, 59.[29]

---

[29] Where the doctrine of personal liability of an officer for acting without jurisdiction is applied, courts have received evidence to show the jurisdictional defect. Thus in *Miller* v. *Horton*, 152 Mass. 540; 126 N. E. 100, an action was brought against the members of a town board of health who had killed a horse in obedience to an order of the commissioners on contagious diseases among domestic animals, acting under the alleged authority of the state legislature. The order recited that the animal had been examined and was adjudged to have the glanders. The judge before whom the case was tried "found the horse had not the glanders" but declined to rule against the defendants. The Supreme Judicial Court sustained exceptions, holding that

In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function. The case of confiscation is illustrative, the ultimate conclusion almost invariably depending upon the decisions of questions of fact. This court has held the owner to be entitled to " a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts." *Ohio Valley Water Co.* v. *Ben Avon Borough, supra.* See, also, *Prendergast* v. *New York Telephone Co.,* 262 U. S. 43, 50; *Tagg Bros. & Moorhead* v. *United States, supra; Phillips* v. *Commissioner,* 283 U. S. 589, 600. Jurisdiction in the Executive to order deportation exists only if the person arrested is an alien, and while, if there were jurisdiction, the findings of fact of the Executive Department would be conclusive, the claim of citizenship " is a denial of an essential jurisdictional fact " both in the statutory and the constitutional sense, and a writ of *habeas corpus* will issue " to determine the status." Persons claiming to be citizens of the United States " are entitled to a judicial determination of their claims," said this Court in *Ng Fung Ho* v. *White, supra* (259 U. S., at p. 285), and in that case the cause was remanded to the Federal District Court " for trial in that court of the question of citizenship."

In the present instance, the argument that the Congress has constituted the deputy commissioner a fact-finding tribunal is unavailing, as the contention makes the untenable assumption that the constitutional courts may be

---

" The fact as to the horse having the disease was open to investigation in the present action, and on the finding that the horse did not have it, the plaintiff was entitled to a ruling that the defendants had failed to make out their justification." *Id.,* p. 548. See, also, *Pearson* v. *Zehr,* 138 Ill. 48, 51, 52: 29 N. E. 854.

deprived in all cases of the determination of facts upon evidence even though a constitutional right may be involved. Reference is also made to the power of the Congress to change the procedure in courts of admiralty, a power to which we have alluded in dealing with the function of the deputy commissioner in passing upon the compensation claims of employees. But when fundamental rights are in question, this Court has repeatedly emphasized " the difference in security of judicial over administrative action." *Ng Fung Ho* v. *White, supra.* Even where issues of fact are tried by juries in the Federal courts, such trials are under the constant superintendence of the trial judge. In a trial by jury in a Federal court the judge is " not a mere moderator" but " is the governor of the trial" for the purpose of assuring its proper conduct as well as of determining questions of law. *Herron* v. *Southern Pacific Co.,* 283 U. S. 91, 95. In the Federal courts, trial by jury " is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence." *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 13, 14. Where testimony in an equity cause is not taken before the court, the proceeding is still constantly subject to the court's control. And while the practice of obtaining the assistance of masters in chancery and commissioners in admiralty may be regarded, as we have pointed out, as furnishing a certain analogy in relation to the normal authority of the deputy commissioner in making what is virtually an assessment of damages, the proceedings of such masters and commissioners are always subject to the direction of the court and their reports are essentially advisory, a distinction of controlling importance when questions of a fundamental character are in issue.

When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.[30]. We are of the opinion that such a construction is permissible and should be adopted in the instant case. The Congress has not expressly provided that the determinations by the deputy commissioner of the fundamental or jurisdictional facts as to the locality of the injury and the existence of the relation of master and servant shall be final. The finality of such determinations of the deputy commissioner is predicated primarily upon the provision, § 19 (a), that he "shall have full power and authority to hear and determine all questions in respect of such claim." But "such claim" is the claim for compensation under the Act and by its explicit provisions is that of an "employee," as defined in the Act, against his "employer." The fact of employment is an essential condition precedent to the right to make the claim. The other provision upon which the argument rests is that which authorizes the Federal court to set aside a compensation order if it is "not in accordance with law." § 21 (b). In the absence of any provision as to the finality of the determination by the deputy commissioner of the jurisdictional fact of employment, the statute is open to the construction that the court in determining whether a compensation order is in accordance with law may determine the fact of employment which underlies the operation of the statute. And, to remove the question as to validity, we think that the statute should be so construed. Further, the Act expressly requires that

---

[30] *Panama R. Co.* v. *Johnson, supra,* at p. 390; *Missouri Pacific R. Co.* v. *Boone,* 270 U. S. 466, 471, 472; *Richmond Screw Anchor Co.* v. *United States,* 275 U. S. 331, 346; *Blodgett* v. *Holden,* 275 U. S. 142, 148; *Lucas* v. *Alexander,* 279 U. S. 573, 577.

if any of its provisions is found to be unconstitutional, " or the applicability thereof to any person or circumstances " is held invalid, the validity of the remainder of the Act and " the applicability of its provisions to other persons and circumstances " shall not be affected. § 50. We think that this requirement clearly evidences the intention of the Congress not only that an express provision found to be unconstitutional should be disregarded without disturbing the remainder of the statute, but also that any implication from the terms of the Act which would render them invalid should not be indulged. This provision also gives assurance that there is no violation of the purpose of the Congress in sustaining the determinations of fact of the deputy commissioner where he acts within his authority in passing upon compensation claims while denying finality to his conclusions as to the jurisdictional facts upon which the valid application of the statute depends.

Assuming that the Federal court may determine for itself the existence of these fundamental or jurisdictional facts, we come to the question,—Upon what record is the determination to be made? There is no provision of the statute which seeks to confine the court in such a case to the record before the deputy commissioner or to the evidence which he has taken. The remedy which the statute makes available is not by an appeal or by a writ of certiorari for a review of his determination upon the record before him. The remedy is " through injunction proceedings, mandatory or otherwise." § 21 (b). The question in the instant case is not whether the deputy commissioner has acted improperly or arbitrarily as shown by the record of his proceedings in the course of administration in cases contemplated by the statute, but whether he has acted in a case to which the statute is inapplicable. By providing for injunction proceedings, the Congress evidently contemplated a suit as in equity, and in such

a suit the complainant would have full opportunity to plead and prove either that the injury did not occur upon the navigable waters of the United States or that the relation of master and servant did not exist, and hence that the case lay outside the purview of the statute. As the question is one of the constitutional authority of the deputy commissioner as an administrative agency, the court is under no obligation to give weight to his proceedings pending the determination of that question. If the court finds that the facts existed which gave the deputy commissioner jurisdiction to pass upon the claim for compensation, the injunction will be denied in so far as these fundamental questions are concerned; if, on the contrary, the court is satisfied that the deputy commissioner had no jurisdiction of the proceedings before him, that determination will deprive them of their effectiveness for any purpose. We think that the essential independence of the exercise of the judicial power of the United States in the enforcement of constitutional rights requires that the Federal court should determine such an issue upon its own record and the facts elicited before it.

The argument is made that there are other facts besides the locality of the injury and the fact of employment which condition the action of the deputy commissioner. That contention in any aspect could not avail to change the result in the instant case. But we think that there is a clear distinction between cases where the locality of the injury takes the case out of the admiralty and maritime jurisdiction, or where the fact of employment being absent there is lacking under this statute any basis for the imposition of liability without fault, and those cases which fall within the admiralty and maritime jurisdiction and where the relation of master and servant in maritime employment exists. It is in the latter field that the provisions for compensation apply and that, for the reasons stated in the earlier part of this opinion, the determina-

tion of the facts relating to the circumstances of the injuries received, as well as their nature and consequences, may appropriately be subjected to the scheme of administration for which the Act provides.

It cannot be regarded as an impairment of the intended efficiency of an administrative agency that it is confined to its proper sphere, but it may be observed that the instances which permit of a challenge to the application of the statute, upon the grounds we have stated, appear to be few. Out of the many thousands of cases which have been brought before the deputy commissioners throughout the country, a review by the courts has been sought in only a small number,[31] and an inconsiderable proportion of these appear to have involved the question whether the injury occurred within the martime jurisdiction or whether the relation of employment existed.

We are of the opinion that the District Court did not err in permitting a trial *de novo* on the issue of employment. Upon that issue the witnesses who had testified before the deputy commissioner and other witnesses were heard by the District Court. The writ of certiorari was not granted to review the particular facts but to pass upon the question of principle. With respect to the facts, the two courts below are in accord, and we find no reason to disturb their decision.

*Decree affirmed.*

Mr. Justice Brandeis, dissenting.

Knudsen filed a claim against Benson under § 19 (a) of the Longshoremen's and Harbor Workers' Compensation Act, March 4, 1927, c. 509, 44 Stat. 1424. Benson's answer denied, among other things, that the relation of employer and employee existed between him and the claimant. The evidence introduced before the deputy

---

[31] *Supra,* note 10.

commissioner, which occupies 78 pages of the printed record, was directed largely to that issue and was conflicting. The deputy commissioner found that the claimant was in Benson's employ at the time of the injury, and filed an order for compensation under § 21 (a). Benson brought this proceeding under § 21 (b) to set aside the order. The district judge transferred the suit to the admiralty side of the court and held a trial *de novo,* refusing to consider upon any aspect of the case the record before the deputy commissioner. On the evidence introduced in court, he found that the relation of employer and employee did not exist, and entered a decree setting aside the compensation order. 33 F. (2d) 137; 38 F. (2d) 306. The Circuit Court of Appeals affirmed the decree. 45 F. (2d) 66. This Court granted certiorari. 283 U. S. 814. In my opinion, the decree should be reversed, because Congress did not authorize a trial *de novo.*

The primary question for consideration is not whether Congress provided, or validly could provide, that determinations of fact by the deputy commissioner should be conclusive upon the district court. The question is: Upon what record shall the district court's review of the order of the deputy commissioner be based? The courts below held that the respondent was entitled to a trial *de novo;* that all the evidence introduced before the deputy commissioner should go for naught; and that respondent should have the privilege of presenting new, and even entirely different, evidence in the district court. Unless that holding was correct the judgment below obviously cannot be affirmed.

*First.* The initial question is one of construction of the Longshoremen's Act. The Act does not in terms declare whether there may be a trial *de novo* either as to the issue whether the relation of employer and employee existed at the time of the injury, or as to any other issue, tried or triable, before the deputy commissioner. It provides, by § 19 (a), " that the deputy commissioner shall

have full power and authority to hear and determine all questions in respect of " a claim; by § 21 (a) that the compensation order made by the deputy commissioner " shall become effective " when filed in his office, and " unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final . . ."; and by § 21 (b) that " If not in accordance with law, a compensation order may be suspended or set aside, in whole or in part, through injunction proceedings . . . instituted in the Federal district court. . . ."

The phrase in § 21 (b) providing that the order may be set aside " if not in accordance with law " was adopted from the statutory provision, enacted by the same Congress, for review by the Circuit Courts of Appeals of decisions of the Board of Tax Appeals.[1] This Court has settled that the phrase as used in the tax statute means a review upon the record made before the Board. *Phillips* v. *Commissioner,* 283 U. S. 589, 600. The Compensation Commission has consistently construed the Longshoremen's Act as providing for finality of the deputy commissioners' findings on all questions of fact;[2] and care

---

[1] Revenue Act of 1926, 44 Stat. 110: " Sec. 1003. (a) The Circuit Courts of Appeals and the Court of Appeals of the District of Columbia shall have exclusive jurisdiction to review the decisions of the Board. . . .

" (b) Upon such review, such courts shall have power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require."

[2] This opinion was expressed in regulations promulgated by the Commission, under authority conferred by § 39 (a), in the form of instructions to deputy commissioners, dated September 28, 1927; and it was repeated in the Commission's report at the close of the first year of its administration of the Act. Report of United States Employees' Compensation Commission, for fiscal year ending June 30, 1928, p. 33. See also *id.,* June 30, 1929, p. 77; *id.,* June 30, 1930, pp. 63–64; *id.,* June 30, 1931, p. 71. The instructions to deputy

has been taken to provide for formal hearings appropri-
ate to that intention. Compare *Brown* v. *United States,*
113 U. S. 568, 571; *Mason* v. *Routzahn,* 275 U. S. 175,
178. The lower federal courts, except in the case at bar,
have uniformly construed the Act as denying a trial *de
novo* of any issue determined by the deputy commis-
sioner; have held that, in respect to those issues, the re-
view afforded must be upon the record made before the
deputy commissioner; and that the deputy commission-
er's findings of fact must be accepted as conclusive if
supported by evidence, unless there was some irregu-
larity in the proceeding before him.[3]  Nearly all the state

commissioners, elaborated December 10, 1927, and May 15, 1928, re-
quired that the record of proceedings and findings of fact be prepared,
and the proceedings be conducted, in consonance with this view of
the law.

   [3] The question of judicial review under the Act has been passed
upon by the First, Second, Third, Fourth and Ninth Circuit Courts
of Appeals, as well as the Fifth; by a district court in the Sixth
Circuit; and by the Court of Appeals of the District of Columbia,
under the Act of May 17, 1928, c. 612, 45 Stat. 600. *Pocahontas Fuel
Co.* v. *Monahan,* 41 F. (2d) 48, 49 (C. C. A. 1st), aff'g 34 F. (2d)
549, 551, [1929] A. M. C. 1598 (D. Me.); *Joyce* v. *Deputy Com-
missioner,* 33 F. (2d) 218, 219 (D. Me.); *Jarka Corp.* v. *Monahan,*
48 F. (2d) 283, 284 (D. Mass.); *Booth* v. *Monahan,* 56 F. (2d) 168
(D. Me.); *Wilson & Co., Inc.* v. *Locke,* 50 F. (2d) 81, 82 (C. C. A.
2d); *Travelers Insurance Co.* v. *Locke,* 56 F. (2d) 443 (S. D. N. Y.);
*Calabrese* v. *Locke,* 56 F. (2d) 458 (S. D. N. Y.); *W. J. McCahan
Sugar Refining & Molasses Co.* v. *Norton,* 43 F. (2d) 505, 506 (C. C.
A. 3d), aff'g 34 F. (2d) 499, [1929] A. M. C. 1269 (E. D. Pa.);
*Independent Pier Co.* v. *Norton* (C. C. A. 3d), 54 F. (2d) 734;
*Baltimore & Carolina S. S. Co.* v. *Norton,* 40 F. (2d) 271, 272 (E.
D. Pa.); *Merchants' & Miners' Transp. Co.* v. *Norton,* 32 F. (2d)
513, 515 (E. D. Pa.); *Jarka Corp.* v. *Norton,* 56 F. (2d) 287 (E. D.
Pa.); *Frank Marra Co.* v. *Norton,* 56 F. (2d) 246 (E. D. Pa.);
*Wheeling Corrugating Co.* v. *McManigal,* 41 F. (2d) 593, 594, 595
(C. C. A. 4th); *Obrecht-Lynch Corp.* v. *Clark,* 30 F. (2d) 144, 146
(D. Md.); *Keyway Stevedoring Co.* v. *Clark,* 43 F. (2d) 983 (D.

courts have construed the state workmen's compensation laws, as limiting the judicial review to matters of law.[4] Provisions in other federal statutes, similar to

Md.); *Kranski* v. *Atlantic Coast Shipping Co.*, 56 F. (2d) 166 (D. Md.); *Chesapeake Ship Ceiling Co.* v. *Clark* (D. Md.), decided May 22, 1930 [oral opinion]; *Goble* v. *Clark*, 56 F. (2d) 170 (D. Md.); *Michigan Transit Corp.* v. *Brown*, 56 F. (2d) 200 (W. D. Mich.); *Northwestern Stevedoring Co.* v. *Marshall*, 41 F. (2d) 28, 29 (C. C. A. 9th); *Gunther* v. *Compensation Commission*, 41 F. (2d) 151, 153 (C. C. A. 9th); *Grays Harbor Stevedore Co.* v. *Marshall*, 36 F. (2d) 814, 815 (W. D. Wash.); *Zurich General Accident & Liability Ins. Co.* v. *Marshall*, 42 F. (2d) 1010, 1011 (W. D. Wash.); *Todd Dry Docks, Inc.* v. *Marshall*, 49 F. (2d) 621, 623 (W. D. Wash.); *Grays Harbor Stevedore Co.* v. *Marshall*, 36 F. (2d) 814 (W. D. Wash.); *Rothschild & Co.* v. *Marshall*, 56 F. (2d) 415 (W. D. Wash.), reversed on other grounds, 44 F. (2d) 546 (C. C. A. 9th); *Lea Mathew Shipping Corp.* v. *Marshall*, 56 F. (2d) 860 (W. D. Wash.); *Griffiths & Sprague Stevedoring Co.* v. *Marshall*, 56 F. (2d) 665 (W. D. Wash.); *W. R. Grace & Co.* v. *Marshall*, 56 F. (2d) 441 (W. D. Wash.); *Nelson* v. *Marshall*, 56 F. (2d) 654 (W. D. Wash.); *Grant* v. *Marshall*, 56 F. (2d) 654 (W. D. Wash.); *Zurich General Accident & Liability Co.* v. *Marshall*, 56 F. (2d) 652 (W. D. Wash.); *Ocean Accident & Guarantee Corp.* v. *Solberg*, 56 F. (2d) 607 (W. D. Wash.); compare *Lake Washington Shipyards* v. *Brueggeman*, 56 F. (2d) 665 (W. D. Wash.); *New Amsterdam Casualty Co.* v. *Hoage*, 46 F. (2d) 837 (Ct. of App. D. C.); *Hoage* v. *Murch Bros. Const. Co.*, 50 F. (2d) 983, 984 (Ct. of App. D. C.). See also the following decisions by district courts in the Fifth Circuit: *Showers* v. *Crowell*, 46 F. (2d) 361 (W. D. La.); *Howard* v. *Monahan*, 31 F. (2d) 480, 481, 33 F. (2d) 220, 221 (S. D. Tex.). Compare *T. J. Moss Tie Co.* v. *Tanner*, 44 F. (2d) 928 (C. C. A 5th); *Houston Ship Channel Stevedoring Co.* v. *Sheppeard*, 57 F. (2d) 259, [1931] A. M. C. 1605 (S. D. Tex.).

[4] The Court has been referred to no case arising under the state workmen's compensation laws recognizing a right to trial *de novo* in court. Numerous decisions declare administrative findings of fact to be conclusive. The following decisions all dealt with controversies concerning the existence of a relation of employment. *Hillen* v. *Accident Commission*, 199 Cal. 577, 580; 250 Pac. 570; *York Junction Transfer & Storage Co.* v. *Accident Commissioners*, 202 Cal. 517, 521; 261

those here in question, creating various administrative tribunals, have likewise been treated as not conferring the right to a judicial trial *de novo*.[5]

---

Pac. 704; *Index Mines Corporation* v. *Industrial Commission*, 82 Colo. 272, 275; 259 Pac. 1036; *Ocean Accident & Guarantee Corp.* v. *Wilson*, 36 Ga. App. 784; 138 S. E. 246; *Taylor* v. *Blackwell Lumber Co.*, 37 Idaho 707, 721; 218 Pac. 356; *Cinofsky* v. *Industrial Commission*, 290 Ill. 521, 525; 125 N. E. 286; *Franklin Coal Co.* v. *Industrial Commission*, 296 Ill. 329, 334; 129 N. E. 811; *A. E. Norris Coal Co.* v. *Jackson*, 80 Ind. App. 423, 425; 141 N. E. 227; *Murphy* v. *Shipley*, 200 Iowa 857, 859; 205 N. W. 497; *Churchill's Case*, 265 Mass. 117, 119; 164 N. E. 68; *Hill's Case*, 268 Mass. 491, 493; 167 N. E. 914; *Matter of Dale* v. *Saunders Brothers*, 218 N. Y. 59, 63; 112 N. E. 571; *Federal Mining & Smelting Co.* v. *Thomas*, 99 Okla. 24, 26; 225 Pac. 967; *Oklahoma Pipe Line Co.* v. *Lindsey*, 113 Okla. 296, 298; 241 Pac. 1092; *Belmonte* v. *Connor*, 263 Pa. 470, 472; 106 Atl. 787.

[5](a) Interstate Commerce Commission: Act of June 18, 1910, c. 309, § 1, 36 Stat. 539; see *Interstate Commerce Comm.* v. *Louisville & Nashville R. Co.*, 227 U. S. 88, 92; *United States* v. *Louisville & Nashville R. Co.*, 235 U. S. 314, 320, 321; *Louisville & Nashville R. Co.* v. *United States*, 245 U. S. 463, 466, and other cases collected in I. L. Sharfman, " The Interstate Commerce Commission II," pp. 384–393, 417 et seq.; Act of June 18, 1910, c. 309, § 13, 36 Stat. 539, 555; Act of March 1, 1913, c. 92, 37 Stat. 701, 703. See *Tagg Bros. & Moorhead* v. *United States*, 280 U. S. 420, 444n.

(b) Federal Trade Commission: Act of September 26, 1914, c. 311, § 5, 38 Stat. 717, 719–20; see *Federal Trade Comm.* v. *Curtis Publishing Co.*, 260 U. S. 568, 579, 580; *Federal Trade Comm.* v. *Pacific States Paper Trade Assn.*, 273 U. S. 52, 63; *Arkansas Wholesale Grocers' Assn.* v. *Federal Trade Comm.*, 18 F. (2d) 866, 870, 871; Gregory Hankin, " Conclusiveness of the Federal Trade Commission's Findings as to Facts," 23 Mich. L. Rev. 233, 262–67; Act of October 15, 1914, c. 323, § 11, 38 Stat. 730, 735 (applicable also in appropriate cases to Interstate Commerce Commission and Federal Reserve Board); see *Federal Trade Comm.* v. *Curtis Publishing Co., supra; International Shoe Co.* v. *Federal Trade Comm.*, 280 U. S. 291, 297.

(c) Federal Power Commission: Act of June 10, 1920, c. 285, § 20, 41 Stat. 1063, 1074.

(d) United States Shipping Board: Act of September 7, 1916, c. 451, §§ 29, 31, 39 Stat. 728, 737, 738; see *Isthmian Steamship Co.* v.

The safeguards with which Congress has surrounded the proceedings before the deputy commissioner would be without meaning if those proceedings were to serve merely as an inquiry preliminary to a contest in the courts.[6] Specific provisions of the Longshoremen's Act make clear that it was the aim of Congress to expedite the relief afforded. With a view to obviating the delays incident to judicial proceedings the Act substitutes an administrative tribunal for the court; and, besides providing for notice and opportunity to be heard, endows the proceedings before the deputy commissioner with the customary incidents of a judicial hearing. It prescribes that the parties in interest may be represented by counsel, § 19 (d); that the attendance of witnesses and the

---

*United States* (S. D. N. Y.), 53 F. (2d) 251; compare *U. S. Navigation Co.* v. *Cunard S. S. Co.,* 284 U. S. 474.

(e) Secretary of Agriculture: Act of August 15, 1921, c. 64, §§ 315, 316, 42 Stat. 159, 168; see *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 443, 444; *Stafford* v. *Wallace,* 258 U. S. 495, 512; Act of August 15, 1921, c. 64, § 204, 42 Stat. 159, 162; Act of June 10, 1930, c. 436, §§ 10, 11, 46 Stat. 531, 535.

(f) Board of Tax Appeals: Act of February 26, 1926, c. 27, § 1003 (a), 44 Stat. 9, 110; see *Phillips* v. *Commissioner,* 283 U. S. 589, 600.

(g) Grain Futures Commission: Act of September 21, 1922, c. 369, § 6 (b), 42 Stat. 998, 1002.

(h) District of Columbia Rent Commission: Act of October 22, 1919, c. 80, Title II, § 108, 41 Stat. 297, 301; see *Block* v. *Hirsh,* 256 U. S. 135, 158; *Killgore* v. *Zinkhan,* 274 Fed. 140, 142.

In instances in which Congress intended to permit the introduction of additional evidence in the district court it has so provided in express terms. See, *e. g.,* Act of February 18, 1922, c. 57, § 2, 42 Stat. 388, 389. Compare the provision for review of reparation orders of the Interstate Commerce Commission, Act of June 18, 1910, c. 309, 313, 36 Stat. 539, 554, and of orders for the payment of money by the Shipping Board. Act of September 7, 1916, c. 451, § 30, 39 Stat. 728, 737.

[6] Compare Freund, "Administrative Powers Over Persons and Property," p. 279.

production of documents may be compelled, § 27 (a); that the hearings shall be public, and that they shall be stenographically reported, § 23 (b); that there shall be made " a record of the hearings and other proceedings before the deputy commissioners," § 23 (b); " that the deputy commissioner shall have full power and authority to hear and determine all questions in respect of " a claim, § 19 (a); and that his order shall become final after 30 days, unless a proceeding is filed under § 21 (b) charging that it is "not in accordance with law." Procedure of this character, instead of expediting relief, would entail useless expense and delay if the proceedings before the deputy commissioner were to be repeated in court, and the case tried from the beginning, at the option of either party. The conclusion that Congress did not so intend is confirmed by reference to the legislative history of the Act.[7] Compare *Caminetti* v. *United States,* 242 U. S. 470, 490.

---

[7] Two bills providing workmen's compensation for longshoremen and harbor workers were before the Congress at the same time. H. R. 9498, which was first reported favorably to the House, declared in terms, §§ 22, 24, that " the decision of the deputy commissioner shall be final as to all questions of fact and except as provided in section 24 as to all questions of law." This bill was abandoned by the House in favor of S. 3170, in order that some legislation on the subject, under what was regarded as an emergency, might be passed at that session. H. D., 69th Cong., 1st Sess., ser. 16, pt. 2, pp. 139–141. Although the differences between the two bills were minutely examined in the hearings before the House Committee on the Judiciary, no reference was made to any change in the provisions for review of compensation orders; but on the contrary it was affirmatively stated that the Senate bill likewise enacted administrative finality upon questions of fact. *Id.,* pt. 2, p. 200. The same statement was made in the Senate hearings. *Id.,* pt. 1, pp. 53, 66. The bill was reported to the House as having been amended to " conform substantially " to the bill theretofore reported. H. Rep., No. 1767, 69th Cong., 1st Sess. Both in this report and in the brief debates in both houses, the bill was described as designed to prevent the delay and injustice incident

*Second.* Nothing in the statute warrants the construction that the right to a trial *de novo* which Congress has concededly denied as to most issues of fact determined by the deputy commissioner has been granted in respect to the issue of the existence of the employer-employee relation. The language which is held sufficient to foreclose the right to such a trial on some issues forecloses it as to all. Whether the peculiar relation which the fact of employment is asserted to bear to the scheme of the statute and to the constitutional authority under which it was passed, might conceivably have induced Congress to provide a special method of review upon that question, it is not necessary to inquire. For Congress expressly declared its intention to put, for purposes of review, all the issues of fact on the same basis, by conferring upon the deputy commissioner " full power to hear and determine all questions in respect of such claim," subject only to the power of the court to set aside his order " if not in accordance with law."

The suggestion that " such claim " may be construed to mean only a claim within the purview of the Act seems to me without substance. Logically applied, the suggestion would leave the deputy commissioner powerless to hear or determine any issue of asserted non-liability under the Act. For non-existence of the employer-employee relation is only one of many grounds of non-liability. Thus, there is no liability if the injury was occasioned solely by the intoxication of the employee; or if the injury was due to the wilful intention of the employee to

to litigation, and as affording to maritime workers the same remedies as those provided in state workmen's compensation laws. See 67 Cong. Rec. 10614; 68 Cong. Rec. 5410–5414, 5908. The state workmen's compensation statutes have, almost universally, been construed to provide for final administrative determination of questions of fact, including the fact of the existence of an employment. See note 4, *supra.*

injure or kill himself or another; or if it did not arise
" out of or in the course of employment "; or if the em-
ployer was not engaged in maritime employment in whole
or in part; or if the injured person was the employee of
a subcontractor who has secured payment of compensa-
tion; or if the proceeding is brought against the wrong
person as employer; or if the disability or death is that
of a master or a member of the crew of any vessel; or if
it is that of a person engaged by the master to load or
unload or repair any small vessel under eighteen tons
net; or if it is that of an officer or employee of the United
States or any agency thereof; or if it is that of an officer
or employee of any State, or foreign government, or any
political subdivision thereof; or if recovery for the dis-
ability or death through workmen's compensation pro-
ceedings may be validly provided by state law. And ob-
viously there is no liability if there was in fact neither
disability nor death. It is not reasonable to suppose that
Congress intended to set up a fact-finding tribunal of
first instance, shorn of power to find a portion of the
facts required for any decision of the case; or that in
enacting legislation designed to withdraw from litigation
the great bulk of maritime accidents, it contemplated a
procedure whereby the same facts must be twice litigated
before a longshoreman could be assured the benefits of
compensation.

The circumstance that Congress provided, in § 21 (b),
for review of orders of the deputy commissioner by in-
junction proceedings is urged as indicative of an inten-
tion that in such proceedings the complainant should have
full opportunity to plead and prove any facts showing
that the case lay outside the purview of the statute. But
by this reasoning, again, many other questions besides
those referred to by the Court would be open to retrial
upon new, and different, evidence. The simple answer
is that on bills in equity to set aside orders of a federal

administrative board there is no trial *de novo* of issues of fact determined by that tribunal. As stated in *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 443, concerning orders of the Secretary of Agriculture under the Packers and Stockyards Act:

"A proceeding under § 316 of the Packers and Stockyards Act is a judicial review, not a trial *de novo.* The validity of an order of the Secretary, like that of an order of the Interstate Commerce Commission, must be determined upon the record of the proceedings before him— save as there may be an exception of issues presenting claims of constitutional right, a matter which need not be considered or decided now." [8]

In the review of the *quasi*-judicial decisions of these federal administrative tribunals the bill in equity serves the purpose which at common law, and under the practice of many of the States, is performed by writs of certiorari.[9] It presents to the reviewing court the record of the proceedings before the administrative tribunal in order that determination may be made, among other things, whether the authority conferred has been properly exercised.[10] Neither upon bill in equity in the fed-

---

[8] Congress has incorporated by reference the provisions for review of orders of the Interstate Commerce Commission in authorizing judicial review of certain orders of the Federal Power Commission and the Shipping Board, as it did in the Packers and Stockyards Act. See note 5, *supra.*

[9] In *People ex rel. New York & Queens Gas Co.* v. *McCall,* 219 N. Y. 84, 88, 90; 113 N. E. 795, it was held that the scope of the review on certiorari of an order of the Public Service Commission was the same as that of the federal court on bill in equity of the orders of the Interstate Commerce Commission as declared in *Interstate Commerce Comm.* v. *Illinois Central R. Co.,* 215 U. S. 452, 470. Compare Vanfleet, "Collateral Attack on Judicial Proceedings," §§ 2, 3.

[10] Certiorari is the historic writ for determining whether the action of an inferior tribunal has been taken within its jurisdiction; and it has sometimes been held that the writ lies only to determine this

eral courts nor writ of certiorari in the States is it the practice to permit fresh evidence to be offered in the reviewing court. There is no foundation for the suggestion that Congress intended to provide otherwise in the Longshoremen's Act.

*Third.* It is said that the provision for a trial *de novo* of the existence of the employer-employee relation should be read into the Act in order to avoid a serious constitutional doubt. It is true that where a statute is equally susceptible of two constructions, under one of which it is clearly valid and under the other of which it may be unconstitutional, the court will adopt the former construction. *Presser* v. *Illinois,* 116 U. S. 252, 269; *Knights Templars' Indemnity Co.* v. *Jarman,* 187 U. S. 197, 205; *Carey* v. *South Dakota,* 250 U. S. 118, 122; *Missouri Pacific R. Co.* v. *Boone,* 270 U. S. 466, 471, 472. But this Act is not equally susceptible to two constructions. The court may not, in order to avoid holding a statute unconstitutional, engraft upon it an exception or other provision. *Butts* v. *Merchants & Miners Transportation Co.,* 230 U. S. 126, 133; *The Employers' Liability Cases,* 207 U. S. 463, 500–502; *Trade-Mark Cases,* 100 U. S. 82, 99; *United States* v. *Fox,* 95 U. S. 670, 672, 673; *United States*

question. Compare *Jackson* v. *People,* 9 Mich. 111. But, although there is considerable divergence in the practice of the various States as to the scope of the review, the proceeding, apart from extraordinary statutory provisions, is universally upon the record and the evidence before the inferior tribunal, and not a trial *de novo. Fore* v. *Fore,* 44 Ala. 478, 484; *Los Angeles* v. *Young,* 118 Cal. 295, 298; 50 Pac. 534; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 185, 186; 149 Pac. 35; *Uphoff* v. *Industrial Board,* 271 Ill. 312; 111 N. E. 128; *Tiedt* v. *Carstensen,* 61 Iowa 334, 336; 16 N. W. 214; *Lord* v. *County Commissioners,* 105 Maine 556, 561; 75 Atl. 126; *Jackson* v. *People,* 9 Mich. 111, 119, 120; *Wait* v. *Krewson,* 59 N. J. L. 71, 75; 35 Atl. 742; *Milwaukee Western Fuel Co.* v. *Industrial Commission,* 159 Wis. 635, 641, 642; 150 N. W. 998. It was so at common law. See Freund, "Administrative Powers Over Persons and Property," pp. 267–269.

v. *Reese,* 92 U. S. 214, 221. Compare *Illinois Central R. Co.* v. *McKendree,* 203 U. S. 514, 529; *Cella Commission Co.* v. *Bohlinger,* 147 Fed. 419, 423, 424. Neither may it do so to avoid having to resolve a constitutional doubt. To hold that Congress conferred the right to a trial *de novo* on the issue of the employer-employee relation seems to me a remaking of the statute and not a construction of it.

*Fourth.* Trial *de novo* of the issue of the existence of the employer-employee relation is not required by the due process clause. That clause ordinarily does not even require that parties shall be permitted to have a judicial tribunal pass upon the weight of the evidence introduced before the administrative body. See *Dahlstrom Metallic Door Co.* v. *Industrial Board,* 284 U. S. 594. The findings of fact of the deputy commissioner, the Court now decides, are conclusive as to most issues, if supported by evidence. Yet as to the issue of employment the Court holds not only that such findings may not be declared final, but that it would create a serious constitutional doubt to construe the Act as committing to the deputy commissioner the simple function of collecting the evidence upon which the court will ultimately decide the issue.

It is suggested that this exception is required as to issues of fact involving claims of constitutional right. For reasons which I shall later discuss, I cannot believe that the issue of employment is one of constitutional right. But even assuming it to be so, the conclusion does not follow that the trial of the issue must therefore be upon a record made in the district court. That the function of collecting evidence may be committed to an administrative tribunal is settled by a host of cases,[11] and

---

[11] See the statutes and cases cited in note 5, *supra.* Similar decisions have been repeatedly made, under the Fourteenth Amendment, in cases coming from the state courts. This Court has recently decided that a state workmen's compensation act may validly provide

supported by persuasive analogies, none of which justify
a distinction between issues of constitutional right and
any others. Resort to administrative remedies may be
made a condition precedent to a judicial hearing. *North-
ern Pacific Ry. Co. v. Solum*, 247 U. S. 477, 483, 484; *First
National Bank v. County Commissioners*, 264 U. S. 450,
454, 455; *United States Navigation Co. v. Cunard S. S.
Co.*, 284 U. S. 474. This is so even though a party is
asserting deprivation of rights secured by the Federal
Constitution. *First National Bank v. County Com-
missioners, supra.* In federal equity suits, the taking
of evidence on any issue in open court did not become
common until 1913,[12] compare *Los Angeles Brush Mfg.*

for judicial review upon matters of law only. *Dahlstrom Metallic
Door Co. v. Industrial Board*, 284 U. S. 594. See also *New York Cen-
tral R. R. Co. v. White*, 243 U. S. 188, 207, 208. In *Missouri ex rel.
Hurwitz v. North*, 271 U. S. 40, 42, it was held that a state board of
health might be empowered, upon reasonable notice, specification of
charges and opportunity to be heard, to revoke a physician's license,
subject only to review in the courts upon certiorari. In *Washington
ex rel. Oregon Railroad & Navigation Co. v. Fairchild*, 224 U. S. 510,
527, a statute was upheld which confined the court upon review of a
public service commission's order to the evidence introduced before
the commission. See also *Wadley Southern Ry. Co. v. Georgia*, 235
U. S. 651, 661; *New York ex rel. New York & Queens Gas Co. v.
McCall*, 245 U. S. 345, 348, 349; *Napa Valley Electric Co. v. Railroad
Commission*, 251 U. S. 366, 370; *Northern Pacific Ry. Co. v. Depart-
ment of Public Works*, 268 U. S. 39, 42. In *Long Island Water Sup-
ply Co. v. Brooklyn*, 166 U. S. 685, 695, it was held that the findings of
fact by commissioners in assessing damages in condemnation proceed-
ings might be made final, leaving open to the court only the question
whether there was any error in the basis of appraisal, or otherwise.
See also *Crane v. Hahlo*, 258 U. S. 142, 147; *Hardware Dealers Mu-
tual Fire Insurance Co. v. Glidden Co.*, 284 U. S. 151. Compare
*Pacific Live Stock Co. v. Lewis*, 241 U. S. 440, 451, 452.

[12] See Griswold and Mitchell, "The Narrative Record in Federal
Equity Appeals," 42 Harv. L. Rev. 483, 488, 491; Lane, "One Year
Under the New Federal Equity Rules," 27 Harv. L. Rev. 629, 639.
Compare 2 Daniell, "Chancery Practice," 2d ed., 1045–46, 1053–54,
1069 *et seq.*

_Corp._ v. _James,_ 272 U. S. 701; and in admiralty it was not required by the Rules of this Court until 1921.[13] Compare _The P. R. R. No. 35,_ 48 F. (2d) 122. On appeals in admiralty, further proof is now taken by a commission.[14] As was said concerning a similar tribunal in _Washington ex rel. Oregon Railroad & Navigation Co._ v. _Fairchild,_ 224 U. S. 510, 527, the function of the deputy commissioner is like that of a master in chancery who has been required to take testimony and report his findings of fact and conclusions of law. Compare _Los Angeles Brush Corp._ v. _James, supra; Kimberly_ v. _Arms,_ 129 U. S. 512, 524, 525; _Armstrong_ v. _Belding Bros. & Co.,_ 297 Fed. 728, 729. The holding that the difference between the procedure prescribed by the Longshoremen's Act and these historic methods of hearing evidence transcends the limits of congressional power when applied to the issue of the existence of a relation of employment, as distinguished from that of the circumstances of an injury or the existence of a relation of dependency, seems to me without foundation in reality. Certainly, there is no difference to the litigant.

---

[13]Admiralty Rule 46, 254 U. S. 698. Subsequent to 1842, when the procedure in admiralty became subject to rules promulgated by this Court, and prior to 1921, no rule specifically required that evidence be taken orally in open court, and the practice in some districts appears to have been to take proofs by a commission. Compare Admiralty Rules 44, 46, 210 U. S. 558; _The Guy C. Goss,_ 53 Fed. 826, 827; _The Wavelet,_ 25 Fed. 733, 734. See also _The Sun,_ 271 Fed. 953, 954. Under the present rules the district court may still, upon proper circumstances, refer causes in admiralty to a commissioner, without the consent of the parties, to hear the testimony and report conclusions on issues of fact and law. _The P. R. R. No. 35,_ 48 F. (2d) 122; _Sorenson & Co._ v. _Liverpool, Brazil & River Plate Steam Nav. Co.,_ 47 F. (2d) 332. Compare _The City of Washington,_ 92 U. S. 31, 39; _Los Angeles Brush Mfg. Corp._ v. _James,_ 272 U. S. 701. The commissioner's findings of fact are not disturbed unless clearly erroneous. _La Bourgogne,_ 144 Fed. 781, 783, aff'd, 210 U. S. 95; _Anderson_ v. _Alaska S. S. Co.,_ 22 F. (2d) 532, 535.

[14] See Admiralty Rule 45, 254 U. S. 698; Rule 15, 275 U. S. 607.

Even in respect to the question, discussed by the Court, of the finality to be accorded administrative findings of fact in a civil case involving pecuniary liability, I see no reason for making special exception as to issues of constitutional right, unless it be that under certain circumstances, there may arise difficulty in reaching conclusions of law without consideration of the evidence as well as the findings of fact. See *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 443. Compare *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287. The adequacy of that reason need not be discussed. For as to the issue of employment no such difficulty can be urged. Two decades of experience in the States testify to the appropriateness of the administrative process as applied to this issue, as well as all others, in workmen's compensation controversies.

*Fifth.* Trial *de novo* of the existence of the employer-employee relation is not required by the Judiciary Article of the Constitution. The mere fact that the Act deals only with injuries arising on navigable waters, and that independently of legislation such injuries can be redressed only in courts of admiralty,[15] obviously does not preclude Congress from denying a trial *de novo.* For the Court holds that it is compatible with the grant of power under Article III to deny a trial *de novo* as to most of the facts

---

[15] The decision of the District Court, acquiesced in by the Circuit Court of Appeals and this Court, that the remedy under § 21 (b) of the Longshoremen's Act is in admiralty seems to me unfounded. The provision in that section for suspending or setting aside a compensation order by injunction clearly implies a proceeding upon bill in equity. Congress may authorize actions for maritime torts to be brought on the law side of the federal district courts, *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 385; or in the state courts, *Engel* v. *Davenport,* 271 U. S. 33, 37. See also *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 384. No constitutional objection can exist, therefore, to giving effect to the remedy in equity provided in this Act.

upon which rest the allowance of a claim and the amount of compensation. Its holding that the Constitution requires a trial *de novo* of the issue of the employer-employee relation is based on the relation which that fact bears to the statutory scheme propounded by Congress, and to the constitutional authority under which the Act was passed. The argument is that existence of the relation of employer and employee is, as a matter of substantive law, indispensable to the application of the statute, because the power of Congress to enact the legislation turns upon its existence; and that whenever the question of constitutional power depends upon an issue of fact that issue must, as a matter of procedure, be determinable independently upon evidence freshly introduced in a court.[16] Neither proposition seems to me well founded.

Whether the power of Congress to provide compensation for injuries occurring on navigable waters is limited to cases in which the employer-employee relation exists has not heretofore been passed upon by this Court and was not argued in this case. I see no justification for assuming, under those circumstances, that it is so limited.

---

[16] The opinion of the Court suggests that, upon similar reasoning, the issue whether the injury occurred on navigable waters must likewise be open to independent redetermination, upon the facts as well as the law, in the district court. The question whether any peculiar significance attaches to such a controversy, entitling it to be twice tried, is not before us. It has never been decided that the power of Congress to provide compensation for injuries to workmen received in the course of maritime employment depends upon the injury having occurred upon navigable waters. See Benedict, " The American Admiralty," 5th ed., § 25. Compare *Soper* v. *Hammond Lumber Co.*, 4 F. (2d) 872; *State Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263. The Longshoremen's Act undertakes to cover only the field of admiralty jurisdiction within which the decisions of this Court have held uniformity to be required. See Stanley Morrison, " Workmen's Compensation and the Maritime Law," 38 Yale L. J. 472, 500.

Without doubt the word " employee " was used in the Long-shoremen's Act in the sense in which the common law defines it.  But that definition is not immutable; and no provision of the Constitution confines the application of liability without fault to instances where the relation of employment, as so defined, exists.[17]  Compare *Louis Pisitz Dry Goods Co.* v. *Yeldell,* 274 U. S. 112, 116.  Whether an individual is an employee or an independent contractor, depends upon criteria often subtle and uncertain of application,[18] criteria which have been developed by proc-

---

[17] That legislatures may abolish defenses recognized at common law and create new causes of action not so recognized is beyond question. So also is the power, under proper circumstances, to provide for liability without fault.  Compare *St. Louis & San Francisco Ry. Co.* v. *Mathews,* 165 U. S. 1; *Chicago, Rock Island & Pacific Ry. Co.* v. *Zernecke,* 183 U. S. 582; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Taylor,* 210 U. S. 281; *New York Central R. Co.* v. *White,* 243 U. S. 188.  Congress may provide that a carrier shall be liable for loss or damage to goods occurring beyond its own lines.  *Atlantic Coast Line R. Co.* v. *Riverside Mills,* 219 U. S. 186, 203.  See also *Atlantic Coast Line R. Co.* v. *Glenn,* 239 U. S. 388, 393. " The rule," said the Court, " is adapted to secure the rights of the shipper by securing unity of transportation with unity of responsibility."  That Congress might not similarly secure unity of responsibility for injuries to all persons working upon the same enterprise, irrespective of the particular relation existing of contract or employment, is not to be assumed without argument and in the absence of circumstances presenting the question.  The logic upon which workmen's compensation acts have been sustained does not require insistence upon a technical master and servant relation.  Compare *Ward & Gow* v. *Krinsky,* 259 U. S. 503.  See also Jeremiah Smith, " Sequel to Workmen's Compensation Acts," 27 Harv. L. Rev. 235, 344.

The common law, of course, holds many examples of liability to third persons for injury sustained at the hands of an independent contractor or his servant.  *e. g., Ellis* v. *Sheffield Co.,* 2 E. & B. 767; *Pickard* v. *Smith,* 10 C. B. (n. s.) 470; *Doll* v. *Ribetti,* 203 Fed. 593.

[18] See the analysis and criticism in William O. Douglas, " Vicarious Liability and Administration of Risk," 38 Yale L. J. 584, 594–604. Compare O. W. Holmes, "Agency," 5 Harv. L. Rev. 1, 14–16.

esses of judicial exclusion and inclusion, largely since the adoption of the Constitution [19] and with reference, for the most part, to considerations foreign to industrial accident litigation. It is not to be assumed that Congress, having power to amend and revise the maritime law, is prevented from modifying those criteria and enlarging the liability imposed by this Act so as to embrace all persons who are engaged or engage themselves in the work of another, including those now designated as independent contractors. In the Longshoremen's Act itself, Congress, far from declaring the relation of master and servant indispensable in all cases to the application of the statute, provided expressly that a contractor shall be liable to employees of a subcontractor who has failed to secure payment of compensation. § 4 (a). State workmen's compensation laws almost invariably contain provisions for liability either to independent contractors or to their employees, sometimes absolute and sometimes conditioned upon default by the immediate employer;[20] and these pro-

---

[19] See Baty, "Vicarious Liability," *passim;* Francis Bowes Sayre, "Criminal Responsibility for Acts of Another," 43 Harv. L. Rev. 689, 691–694; O. W. Holmes, "Agency," 4 Harv. L. Rev. 345, 5 *id.* 1. The first text-book on Agency did not appear until 1812. Paley, "The Law of Principal and Agent."

[20] See the digests of the statutes in L. V. Hill and Ralph H. Wilkin, "Workmen's Compensation Statute Law"; and F. Robertson Jones, "Digest of Workmen's Compensation Laws" (10th ed.). The provision in the New York Workmen's Compensation Act, § 56, is illustrative: "A contractor, the subject of whose contract is, involves or includes a hazardous employment, who subcontracts all or any part of such contract shall be liable for and shall pay compensation to any employee injured. . . ." In 1927, in recommending the extension of this provision to include owners or lessees as well as general contractors, the State Industrial Commissioner said: "From the point of view of making sure of compensation to injured workers, all the reasons for the existing obligations put upon a general contractor for a piece of building work who sublets part of the work, are equally cogent for doing the same in case of an owner or lessee of premises

visions appear to have been uniformly upheld.[21] I cannot doubt that, even upon the view of the evidence taken by the District Court, Congress might have made Benson liable to Knudsen for the injury which he sustained.

*Sixth.* Even if the constitutional power of Congress to provide compensation is limited to cases in which the

who lets part of building work in precisely the same way. The practical need for doing it has been shown by experience to be extensive owing to the large amount of building work now being done under the method above noted and which this amendment is designed to cover.

" The existing provision has proven very beneficial in the case of contractors, and it will be equally useful in the case of the type of owner-contractor, so to speak, who must now be dealt with for solution of the same problem." Annual Report of the Industrial Commissioner (1927), pp. 4, 5.

[21] See, *e. g., Industrial Commission* v. *Continental Investment Co.,* 78 Colo. 398, 401, 402; 242 Pac. 49; *Palumbo* v. *George A. Fuller Co.,* 99 Conn. 355, 358; 122 Atl. 63; *Fisk* v. *Bonner Tie Co.,* 40 Idaho 304, 308; 232 Pac. 569; *Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498, 504; 113 N. E. 976; *American Steel Foundries* v. *Industrial Board,* 284 Ill. 99, 103; 119 N. E. 902; *McDowell* v. *Duer,* 78 Ind. App. 440, 444, 445; 133 N. E. 839; *Burt* v. *Clay,* 207 Ky. 278, 281; 269 S. W. 322; *Seabury* v. *Arkansas Natural Gas Corp.,* 171 La. 199, 204, 205; 130 So. 1; *White* v. *George B. H. Macomber Co.,* 244 Mass. 195, 198; 138 N. E. 239; *Burt* v. *Munising Woodenware Co.,* 222 Mich. 699, 702, 703; 193 N. W. 895; *De Lonjay* v. *Hartford Accident & Indemnity Co.,* 35 S. W. (2d) 911, 912 (Mo.); *Sherlock* v. *Sherlock,* 112 Neb. 797, 799; 201 N. W. 645; *O'Banner* v. *Pendlebury,* 107 N. J. L. 245, 247; 153 Atl. 494; *Clark* v. *Monarch Engineering Co.,* 248 N. Y. 107, 110; 161 N. E. 436; *De Witt* v. *State,* 108 Ohio St. 513, 522–525; 141 N. E. 551; *Green* v. *Industrial Commission,* 121 Okla. 211, 212; 249 Pac. 933; *Qualp* v. *James Stewart Co.,* 266 Pa. 502; 109 Atl. 780; *Murray* v. *Wasatch Grading Co.,* 73 Utah 430, 436, 439; 274 Pac. 940; *Threshermen's Nat. Ins. Co.* v. *Industrial Commission,* 201 Wis. 303, 306; 230 N. W. 67; *Wisinger* v. *White Oil Corp.,* 24 F. (2d) 101, 102. But compare *Flickenger* v. *Accident Commission,* 181 Cal. 425, 432, 433; 184 Pac. 851. Liability to pay compensation obtains in England under circumstances in which no relation of employment exists. See *Mulrooney* v. *Todd* (1909), 1 K. B. 165; *Marks* v. *Carne* (1909), 2 K. B. 516.

employer-employee relation exists, I see no basis for a contention that the denial of the right to a trial *de novo* upon the issue of employment is in any manner subversive of the independence of the federal judicial power. Nothing in the Constitution, or in any prior decision of this Court to which attention has been called, lends support to the doctrine that a judicial finding of any fact involved in any civil proceeding to enforce a pecuniary liability may not be made upon evidence introduced before a properly constituted administrative tribunal, or that a determination so made may not be deemed an independent judicial determination. Congress has repeatedly exercised authority to confer upon the tribunals which it creates, be they administrative bodies or courts of limited jurisdiction, the power to receive evidence concerning the facts upon which the exercise of federal power must be predicated, and to determine whether those facts exist. The power of Congress to provide by legislation for liability under certain circumstances subsumes the power to provide for the determination of the existence of those circumstances. It does not depend upon the absolute existence in reality of any fact.

It is true that, so far as Knudsen is concerned, proof of the existence of the employer-employee relation is essential to recovery under the Act. But under the definition laid down in *Noble* v. *Union River Logging Co.*, 147 U. S. 165, 173, 174, that fact is not jurisdictional. It is *quasi*-jurisdictional. The existence of a relation of employment is a question going to the applicability of the substantive law, not to the jurisdiction of the tribunal. Jurisdiction is the power to adjudicate between the parties concerning the subject-matter. Compare *Reynolds* v. *Stockton*, 140 U. S. 254, 268. Obviously, the deputy commissioner had not only the power but the duty to determine whether the employer-employee relation existed. When a duly constituted tribunal has juris-

diction of the parties and of the subject-matter, that jurisdiction is not impaired by errors, however grave, in applying the substantive law. *Dennison* v. *Payne,* 293 Fed. 333, 341. Compare *Chicago, Rock Island & Pacific Ry. Co.* v. *Schendel,* 270 U. S. 611, 617; *Marin* v. *Augedahl,* 247 U. S. 142, 149; *Binderup* v. *Pathé Exchange,* 263 U. S. 291, 305–307. This is true of tribunals of special as well as of those of general jurisdiction. It is true of administrative, as well as of judicial tribunals. If errors in the application of law may not be made the basis of collateral attack upon the decision of an administrative tribunal, once that decision has become final, no "jurisdictional" defect can compel the independent reexamination in court, upon direct review, of the facts affecting such applicability.

The "judicial power" of Article III of the Constitution is the power of the federal government, and not of any inferior tribunal. There is in that Article nothing which requires any controversy to be determined as of first instance in the federal district courts. The jurisdiction of those courts is subject to the control of Congress.[22] Mat-

---

[22] *Turner* v. *Bank of North America,* 4 Dall. 8, 10; *United States* v. *Hudson & Goodwin,* 7 Cranch 32, 33; *Shelden* v. *Sill,* 8 How. 441, 449; *Justices* v. *Murray,* 9 Wall. 274, 280; *Insurance Co.* v. *Dunn,* 19 Wall. 214, 226; *Stevenson* v. *Fain,* 195 U. S. 165, 167; *Kline* v. *Burke Construction Co.,* 260 U. S. 226, 234. It was not until the Act of March 3, 1875, c. 137, 18 Stat. 470, that Congress extended the jurisdiction of the circuit courts to "cases arising under the laws of the United States," thus permitting to be exercised "the vast range of power which had lain dormant in the Constitution since 1789."

See Felix Frankfurter and James M. Landis, "The Business of the Supreme Court," pp. 65–68; Charles Warren, "Federal Criminal Laws and the State Courts," 38 Harv. L. Rev. 545. Large areas of the potential jurisdiction of the lower federal courts are now occupied by other tribunals. As to legislative courts, see Wilber Griffith Katz, "Federal Legislative Courts," 43 Harv. L. Rev. 894. Congress has repeatedly exercised power to exclude from the federal courts cases not involving the requisite jurisdictional amount. Cases aris-

ters which may be placed within their jurisdiction may instead be committed to the state courts. If there be any controversy to which the judicial power extends that may not be subjected to the conclusive determination of administrative bodies or federal legislative courts, it is not because of any prohibition against the diminution of the jurisdiction of the federal district courts as such, but because, under certain circumstances, the constitutional requirement of due process is a requirement of judicial process. An accumulation of precedents, already referred to,[23] has established that in civil proceedings in-

---

ing under the Federal Employers' Liability Act are triable in either the state courts or the federal district courts. See *Second Employers' Liability Cases*, 223 U. S. 1, 56, 57–59; *Douglass* v. *New York, New Haven & Hartford R. Co.*, 279 U. S. 377. So also cases under § 20 of the Seamen's Act, as amended by the Merchant Marine Act of 1920, § 33. *Engel* v. *Davenport*, 271 U. S. 33, 37; *Panama R. Co.* v. *Vasquez*, 271 U. S. 557, 562.

[23] See decisions and statutes collected in note 5, *supra*. So far as concerns the question here presented, it is immaterial whether the controversy is wholly between private parties or is between the Government and a citizen. The fact that litigation under the Longshoremen's Act is, in substance, between private parties (even though under § 21 (b) the deputy commissioner is the only necessary party respondent) does not warrant the inference that the administrative features of the Act present a question not heretofore decided. The tribunals listed in note 5, *supra*, deal with matters outside the scope of the doctrine recently examined in *Ex parte Bakelite Corporation*, 279 U. S. 438. While the opinion in that case referred to " various matters arising between the government and others " as appropriate for the cognizance of legislative courts, the reference was restricted to matters " which from their nature do not require judicial determination and yet are susceptible to it," the mode of determining which " is completely within congressional control." *Ibid.* at 451. The suggestion that due process does not require judicial process in any controversy to which the government is a party would involve a revision of historic conceptions of the nature of the federal judicial system. That all questions arising in the administration of the Interstate Commerce Act, for example, or between a taxpayer and the government under the tax laws, could be committed by Congress

volving property rights determination of facts may constitutionally be made otherwise than judicially; and necessarily that evidence as to such facts may be taken outside of a court. I do not conceive that Article III has properly any bearing upon the question presented in this case.

*Seventh.* The cases cited by the Court in support of its conclusion that the statute would be invalid if construed to deny a trial *de novo* of issues of fact affecting the existence of the employer-employee relation seem to me irrelevant. Most of those decisions dealt with tribunals exercising functions generically different from the function which Congress has assigned to the deputy commissioners under the Longshoremen's Act, and no question arose analogous to that now presented.

By the Longshoremen's Act, Congress created fact-finding and fact-gathering tribunals, supplementing the courts and entrusted with power to make initial determinations in matters within, and not outside, ordinary judicial purview. The purpose of these administrative bodies is to withdraw from the courts, subject to the power of judicial review, a class of controversies which experience has shown can be more effectively and expeditiously handled in the first instance by a special and expert tribunal. The proceedings of the deputy commissioners are endowed with every substantial safeguard of a judicial hearing. Their conclusions are, as a matter of right, open to reëxamination in the courts on all questions of law; and, we assume for the purposes of this discussion, may be open even on all questions of the weight of the evidence.

The administrative bodies in the cases referred to by the Court, on the contrary, are in no sense fact-gathering

exclusively to executive officers, in respect to issues of law as well as of fact, has never been supposed. Thus there is no indication in the opinion in *Ex parte Bakelite Corporation* that the Commerce Court was a legislative court, although instances of the creation of such courts were considered in detail. See Wilber Griffith Katz, " Federal Legislative Courts," 43 Harv. L. Rev. 894, 914, 915.

or fact-finding tribunals of first instance. They are tribunals of final resort within the scope of their authority. Their concern is with matters ordinarily outside of judicial competence,—the deportation of aliens, the enforcement of military discipline, the granting of land patents, and the use of the mails,—matters which are within the power of Congress to commit to conclusive executive determination. Compare *Ex parte Bakelite Corp*, 279 U. S. 438, 451. Their procedure may be summary and frequently is.[24] With respect to them, the function of the courts is not one of review but essentially of control—the function of keeping them within their statutory authority.[25]

---

[24] Compare *Miller* v. *Horton*, 152 Mass. 540; 26 N. E. 100, and *Pearson* v. *Zehr*, 138 Ill. 48; 29 N. E. 854, cited by the Court. These cases involved summary administrative action, and the complaining individuals had been given no opportunity to be heard on the question whether their property was in fact subject to the destruction ordered. The degree of finality appropriate in administrative action must always depend upon the character of the administrative hearing provided. Compare Dickinson, "Administrative Justice and the Supremacy of Law," pp. 260–261; E. F. Albertsworth, " Judicial Review of Administrative Action by the Federal Supreme Court," 35 Harv. L. Rev. 127, 152, 153. In most States, the tendency appears to be to deny the right, in a tort action against an administrative officer, to question the existence of the fact justifying his act, if a hearing was provided or if a suit for injunction could have been brought. See Freund, "Administrative Powers Over Persons and Property," pp. 248–252; *Kirk* v. *Board of Health*, 83 S. C. 372, 383; 65 S. E. 387. Compare *North American Cold Storage Co.* v. *Chicago*, 211 U. S. 306, 316, 317. In cases arising under the Workmen's Compensation Laws, where formal hearing is available, the Massachusetts and Illinois courts, in common with many others, have held the administrative finding of the fact of employment conclusive. *Churchill's Case*, 265 Mass. 117; 164 N. E. 68; *Hill's Case*, 268 Mass. 491; 167 N. E. 914; *Cinofsky* v. *Industrial Commission*, 290 Ill. 521; 125 N. E. 286; *Franklin Coal Co.* v. *Industrial Commission*, 296 Ill. 329; 129 N. E. 811.

[25] Compare Frankfurter and Davison, " Cases on Administrative Law," Preface, p. viii. See Albert Levitt, " The Judicial Review of Executive Acts," 23 Mich. L. Rev. 588, 595 *et seq.* This authority

No method of judicial review of the administrative action had been provided by Congress in any of the cases cited; and the question of the power to confine review to the administrative record accordingly did not arise. In each case, the Court held that if the administrative officer had acted outside his authority, the unwritten law supplied a remedy, and that relief could be had, according to the nature of the case, on bill in equity or habeas corpus.[26]

may embrace as well the determination of questions of law as of fact, depending upon the judicial construction given to the authority of the tribunal. Thus in *In re Grimley, In re Morrissey, Noble* v. *Union River Logging Co., Smith* v. *Hitchcock,* and *Bates & Guild Co.* v. *Payne,* all cited in note 26, *infra,* the Court recognized the conclusiveness of many decisions of law by the tribunals in question. Tribunals of this character are of course empowered, under ordinary circumstances, to make conclusive determinations of fact. See *e. g., Passavant* v. *United States,* 148 U. S. 214, 219; *Medbury* v. *United States,* 173 U. S. 492, 497, 498; *Silberschein* v. *United States,* 266 U. S. 221, 225; *Quon Quon Poy* v. *Johnson,* 273 U. S. 352, 358.

[26](a) In *Ng Fung Ho* v. *White,* 259 U. S. 276, the statute authorized the deportation only of aliens, without provision for judicial review of the executive order. Act of February 5, 1917, c. 29, § 19, 39 Stat. 874, 889. Upon application for a writ of habeas corpus, by a person arrested who claimed to be a citizen, it was held that he was entitled to a judicial determination of that claim. No question arose as to whether Congress might validly have provided for review exclusively upon the record made in the executive department; nor as to the scope of review which might have been permissible upon such record.

(b) *In re Grimley,* 137 U. S. 147, and *In re Morrissey,* 137 U. S. 157, deal with the action of military tribunals. Military tribunals form a system of courts separate from the civil courts and created by virtue of an independent grant of power in the Constitution. Art. I, § 8, cl. 14, 16. They have authority to determine finally any case over which they have jurisdiction; "and their proceedings . . . are not open to review by the civil tribunals, except for the purpose of ascertaining whether the military court had jurisdiction of the person and subject-matter, and whether, though having such jurisdiction, it had exceeded its powers in the sentence pronounced." *Carter* v. *Roberts,* 177 U. S. 496, 498; *Grafton* v. *United States,* 206 U. S. 333,

The question decided in each case was that Congress should not be taken, in the absence of specific provision, to have intended to subject the individual to the uncontrolled action of a public administrative officer. See *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94, 110. No comparable issue is presented here.

Reliance is also placed, as illustrative of the necessary independence of the federal judicial power, upon the decision in *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287.[27] That case, however, involved only the ques-

347. As Congress did not provide any method for review by the courts of the decision of military tribunals, all questions of law concerning military jurisdiction are open to independent determinaton in the civil courts; and the cases of *In re Grimley* and *In re Morrissey,* decide nothing more. Whether Congress could make the findings of "jurisdictional facts" of military tribunals conclusive upon civil courts is a question which appears never to have been raised.

(c) In *Noble* v. *Union River Logging Co.,* 147 U. S. 165, 174, relief was granted by bill in equity to stay illegal and unauthorized action of the Secretary of the Interior in respect to the public lands, there being no method of judicial review prescribed by statute. Compare *Smelting Co.* v. *Kemp,* 104 U. S. 636, 641.

(d) In *Smith* v. *Hitchcock,* 226 U. S. 53, 58, as in *Bates & Guild Co.* v. *Payne,* 194 U. S. 106, 109, 110, and *American School of Magnetic Healing Co.* v. *McAnnulty,* 187 U. S. 94, 109, bills in equity were entertained to review acts of the Postmaster General alleged to be unauthorized, Congress not having provided any method of judicial review. In each case the question involved was stated to be one of law.

[27] The decision in the *Ohio Valley Water Company Case* has evoked extensive and varied comment. See, *e. g.,* Curtis, "Judicial Review of Commission Rate Regulation—The Ohio Valley Case," 34 Harv. L. Rev. 862; Albertsworth, "Judicial Review of Administrative Action by the Federal Supreme Court," 35 Harv. L. Rev. 127; C. W. Pound, "The Judicial Power," 35 Harv. L. 787; Brown, "The Functions of Courts and Commissions in Public Utility Rate Regulations," 38 Harv. L. Rev. 141; Wiel, "Administrative Finality," 38 Harv. L. Rev. 447; Buchanan, "The Ohio Valley Water Company Case and the Valuation of Railroads," 40 Harv. L. Rev. 1033; Beutel, "Valuation as a

tion of the scope of review, upon the administrative record, in confiscation cases. It held that the reviewing court must have power to weigh the evidence upon which the administrative tribunal entered the order. It decided nothing concerning the right to a trial *de novo* in court; and the opinion made no reference to such a trial. It could not have decided anything as to the effect of Article III of the Constitution. For the case came here from the highest court of the State, arose under the Fourteenth Amendment, and did not relate to the jurisdiction of the lower federal courts. Moreover, in no event can the issues presented in the review of rate orders alleged to be confiscatory, which involve difficult questions of mixed law and fact, be deemed parallel to those presented in the review of workmen's compensation awards.[28] Compare the issues in *Ohio Valley Water Co.* v. *Ben Avon Borough, supra,* with that in *Dahlstrom Metallic Door Co.* v. *Industrial Board,* 284 U. S. 594.

Whatever may be the propriety of a rule permitting special reëxamination in a trial court of so-called " juris-

---

Requirement of Due Process of Law in Rate Cases," 43 Harv. L. Rev. 1249; Green, The Ohio Valley Water Case, 4 Ill. L. Q. 55; Freund, " The Right to a Judicial Review in Rate Controversies," 27 W. Va. L. Q. 207; Hardman, " Judicial Review as a Requirement of Due Process in Rate Regulation," 30 Yale L. J. 681; Isaacs, " Judicial Review of Administrative Findings," 30 Yale L. J. 781. No commentator, however, appears to have understood the decision as recognizing in any manner a right to trial *de novo* in court upon confiscation issues.

[28] It is cause for regret that the Court in determining this controversy should have declared, *obiter,* that in matters of State public utility regulation involving administrative action of a special character, and raising questions under a different constitutional provision, a mode of procedure is required contrary to that almost universally established under State law (see David E. Lilienthal, " The Federal Courts and State Regulation of Public Utilities," 43 Harv. L. Rev. 379, 412, 413), and calculated seriously to embarrass the operation of the administrative method in that field.

dictional facts" passed upon by administrative bodies having otherwise final jurisdiction over matters properly committed to them, I find no warrant for extending the doctrine to other and different administrative tribunals whose very function is to hear evidence and make initial determinations concerning those matters which it is sought to reëxamine. Such a doctrine has never been applied to tribunals properly analogous to the deputy commissioners, such as the Interstate Commerce Commission, the Federal Trade Commission, the Secretary of Agriculture acting under the Packers and Stockyards Act, and the like.[29] Logically applied it would seriously impair the entire administrative process.[30]

*Eighth.* No good reason is suggested why all the evidence which Benson presented to the district court in this cause could not have been presented before the deputy commissioner; nor why he should have been permitted to try his case provisionally before the administrative tribunal and then to retry it in the district court upon additional evidence theretofore withheld. To permit him to do so violates the salutary principle that administrative remedies must first be exhausted before resorting to the court, imposes unnecessary and burdensome expense upon the other party and cripples the effective administration of the Act. Under the prevailing practice, by which the judicial review has been confined to questions of law, the proceedings before the deputy commissioners

[29] But see *Interstate Commerce Commission* v. *Louisville & Nashville R. Co.*, 227 U. S. 88, 92. The statement by Mr. Justice Lamar there, however, went no further than to indicate that in some circumstances the courts on review of orders of the Interstate Commerce Commission might pass an independent judgment upon the evidence adduced before the Commission. See also *Interstate Commerce Commission* v. *Northern Pacific Ry. Co.*, 216 U. S. 538, 544; *Manufacturers Ry. Co.* v. *United States*, 246 U. S. 457, 488–490.

[30] See Dickinson, "Administrative Justice and the Supremacy of Law," p. 310.

94

have proved for the most part non-controversial;[31] and relatively few cases have reached the courts.[32] To permit a contest *de novo* in the district court of an issue tried, or triable, before the deputy commissioner will, I fear, gravely hamper the effective administration of the Act. The prestige of the deputy commissioner will necessarily be lessened by the opportunity of relitigating facts in the courts. The number of controverted cases may be largely increased. Persistence in controversy will be encouraged. And since the advantage of prolonged litigation lies with the party able to bear heavy expenses, the purpose of the Act will be in part defeated.[33]

[31] Out of the 30,383 non-fatal cases disposed of during the fiscal year ending June 30, 1931, the deputy commissioners held hearings in only 729, according to information furnished by the United States Employees' Compensation Commission. Compensation payments were completed in 11,776 cases, or 38.8 per cent. of the total. In 17,328 cases, or 57 per cent., the injured employee failed to receive compensation because no time was lost, or less than seven days, on account of the injury. The balance of 1,279 cases, amounting to 4.2 per cent. of the whole, were dismissed because they did not come within the scope of the law. Among the 18,607 non-compensated cases, formal claims were filed by the employee in only 1,025 instances. See, also, Report of the Compensation Commission, 1930, pp. 68–70.

[32] For the fiscal year ending June 30, 1931, 101 new cases were filed in the district courts, out of a total of 30,489 cases disposed of. Report of the United States Employee's Compensation Commission, pp. 69, 71. For the three preceding years the number of cases filed in the courts was, respectively, 61, 58, and 15. Report, 1930, p. 62; *id.* 1929, p. 70; *id.* 1928, p. 34. The decision of the Circuit Court of Appeals in the case at bar declaring the right to a trial *de novo* was rendered November 17, 1930, and the first opinion of the District Court on May 27, 1929.

[33] How serious these consequences will be is a question of speculation; but it is plain that they will be aggravated by the inherent uncertainty in the scope of the doctrine announced. The determination of what facts are " jurisdictional " or " fundamental " is calculated to provoke a multitude of disputes. That there is a difference in kind, for example, between the defense that the injured claimant is not an employee, and that he was not acting as an employee when

In my opinion the judgment of the Circuit Court of Appeals should be reversed and the case remanded to the District Court, sitting as a court of equity, for consideration and decision upon the record made before the deputy commissioner.

MR. JUSTICE STONE and MR. JUSTICE ROBERTS join in this opinion.

he was injured, or that there is a difference between the latter defense and the defense that the disability, if any, from which he suffers resulted only in part, or not at all, from the employment in which he claims to have suffered it, are propositions which employers will be unlikely to accept until they have submitted them to the decision of the courts. The effectiveness of this legislation will be lessened by this opportunity for barren controversy over procedural rights and by delayed or thwarted determination of substantive ones.