# Status of the Commission on Railroad Retirement Reform for Purposes of the Applicability of Ethics Laws

The Commission on Railroad Retirement Reform is not an agency in the executive branch for purposes of determining what obligations members of the Commission may have under the laws governing conflicts of interest and financial disclosure.

Because the Commission is not part of the executive branch for these purposes, the Office of Legal Counsel is without authority to advise the Commission regarding the obligations of its members under whatever conflicts laws may apply to them.

September 14, 1989

MEMORANDUM OPINION FOR THE EXECUTIVE DIRECTOR
COMMISSION ON RAILROAD RETIREMENT REFORM

You have asked for our opinion whether the Commission on Railroad Retirement Reform ("Commission") should be regarded as an agency in the executive branch for purposes of determining what obligations members of the Commission may have under the laws governing conflicts of interest and financial disclosure. *See* 18 U.S.C. §§ 201-211; 5 U.S.C. app. §§ 201-211; 2 U.S.C. §§ 701-709. We have examined the relevant statutory provisions and the legislative history of the Commission and have concluded that the Commission should not be considered part of the executive branch for the purposes as to which you have inquired. Accordingly, we are unable to advise the Commission's members regarding their obligations under applicable conflict of interest and financial disclosure laws.

## Analysis

The Commission was established by section 9033 of the Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330, 1330-296 to 1330-299. The status within the government of an office created by statute is a matter of statutory interpretation, controlled by legislative intent. *Ameron, Inc. v. United States Army Corps of Engineers*, 787 F.2d 875, 892-93 (3d Cir.) (Becker, J., concurring in part) (regarding Comptroller General), *modified*, 809 F.2d 979 (3d Cir. 1986), *cert. dismissed*, 488 U.S. 918 (1988). Neither the statute nor its legislative history, however, expressly provide the branch of the government within which the Commission fits, either for purposes of determining the applicable

285

ethics and disclosure regulations or otherwise.[1] Therefore, inferences must be drawn from the structure and purpose of the Commission as provided by the statute.

Four of the Commission's seven officers are appointed by the President, and the Speaker of the House of Representatives, the President pro tempore of the Senate, and the Comptroller General each appoint one of the remaining three members. § 9033(c)(1)(A)-(C).[2] The Commission is directed to

> conduct a comprehensive study of the issues pertaining to the long-term financing of the railroad retirement system ... and the system's short-term and long-term solvency. The Commission shall submit a report containing a detailed statement of its findings and conclusions together with recommendations *to the Congress for revisions in, or alternative to, the current system.*

§ 9033(b) (emphasis added). The Commission's study must consider various factors relating to the economic outlook for the railroad industry and its retirement system, as well as "any other matters which the Commission considers would be necessary, appropriate, or useful *to the Congress in developing legislation* to reform the system." § 9033(b)(5) (emphasis added). The Commission is further directed to transmit the report to the President and to each chamber of the Congress by October 1, 1989. § 9033(f).[3]

With the possible exception of the transmission of its report to the President, the Commission performs only "investigative and informative" functions that could be undertaken by a congressional committee and that are removed from the administration and enforcement of public law. *See Buckley v. Valeo*, 424 U.S. 1, 126, 137-38 (1976). The Commission's members therefore need not be officers of the United States, appointed in conformity with the Appointments Clause of the Constitution, Article II, Section 2, Clause 2.[4] *Id.* Rather, the Commission's functions, broadly

---

[1] The statute's sole ethics provision, an undesignated subpart of the subsection governing the Commissioner's manner of appointment and qualifications, states only that "[a]ll public members of the Commission shall be appointed from among individuals who are not in the employment of and are not pecuniarily or otherwise interested in any employer . or organization of employees." § 9033(c)(1).

[2] Although the President's power to remove officials would be of decisive importance in determining whether those officials are executive officers, *see Bowsher v. Synar*, 478 U.S 714, 726-30 (1986); *Mistretta v United States*, 488 U.S 361, 423 (1989) (Scalia, J., dissenting), the statute at issue here makes no express provision for removal of Commissioners, merely providing that "[a] vacancy in the Commission shall be filled in the manner in which the original appointment was made " § 9033(c)(1)

[3] Congress later extended this deadline by one year in section 7108 of the Technical and Miscellaneous Revenue Act of 1988, Pub. L No. 100-647, 102 Stat. 3342, 3774

[4] The provisions of the statute relating to provision of personnel or information by federal agencies to the Commission do not, in our view, vest the Commission or its Chairman with the ability to "exercis[e]

Continued

286

considered, are of the sort characteristically exercised by agencies of either the executive branch, *see* U.S. Const. art. II, § 3 ("[The President] shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient ...."); *Applicability of the Hatch Act to the Chairman of the Native Hawaiians Study Commission*, 6 Op. O.L.C. 292, 295 (1982) ("[T]he making of recommendations to Congress is not a purely legislative function, but falls squarely within the duties and powers of the Executive."), or the legislative branch. *See Buckley v. Valeo*, 424 U.S. at 137-38; *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927).[5]

If the Commission were deemed because of these duties to be part of the executive branch, however, other provisions concerning the manner in which the Commission is to execute these duties, as well as the manner of appointment of the Commissioners, could raise serious constitutional questions with respect to the statute. As noted above, section 9033(b) requires the Commission to "submit a report containing a detailed statement of its findings and conclusions together with recommendations to the Congress for revisions in, or alternatives to, the current system." This requirement is recapitulated in section 9033(f), which provides that "[t]he Commission shall transmit a report to the President and to each House of the Congress [that] shall contain a detailed statement of the findings and conclusions together with recommendations to the Congress for revisions in, or alternatives to, the current system." This requirement is recapitulated in section 9033(f), which provides that "[t]he Commission shall transmit a report to the President and to each House of Congress [that] shall contain a detailed statement of the findings and conclusions of the Commission, *together with its legislative recommendations.*" (Emphasis added.)

It has been the longstanding view of the Department of Justice that Article III, Section 3 of the Constitution vests in the President plenary and

---

[4] (...continued)

significant authority pursuant to the laws of the United States," *Buckley v Valeo*, 424 U.S. at 126, because they do not either directly or indirectly involve the exercise by the Commission of authority over or on behalf of third parties. *See Currin v Wallace*, 306 U S 1, 15 (1939) Indeed, for the most part these provisions merely permit federal agencies to respond to the requests of the Commission or its Chairman. Section 9033(d)(4) provides that "[u]pon request of the Commission, the Railroad Retirement Board and any other Federal agency *may* detail, on a reimbursable basis, any of the personnel thereof to the Commission to assist the Commission in carrying out its duties under this section " (Emphasis added ) Similarly, section 9033(e)(1) provides that "[t]he Commission may, *as appropriate*, secure directly from any department or agency of the United States information necessary to enable it to carry out this section Upon request of the Chairman of the Commission, the head of such department or agency shall, *as appropriate*, furnish such information to the Commission." (Emphasis added.)

[5] The fact that the Commission is required to provide its report both to Congress and the President, and thus might be said to be vested with "[o]bligations to two branches[, is] not .. impermissible and the presence of such dual obligations does not prevent [its] characterization    as part of one branch " *Bowsher v. Synar*, 478 U S. at 746 (Stevens, J , concurring in the judgment)

exclusive discretion concerning legislative proposals submitted by the executive branch to the Congress. Thus, Congress may not require executive branch officials to submit legislative proposals to the Congress. *See, e.g., Constitutionality of Statute Requiring Executive Agency to Report Directly to Congress*, 6 Op. O.L.C. 632, 640 (1982) (legislation mandating submission of legislative proposals trenches on President's Article II, Section 3 authority). Similarly, the Department has repeatedly opined that statutes purporting to require that executive branch officials submit reports directly to Congress, without any prior review by their superiors, would raise serious constitutional questions by impairing the President's constitutional right to direct his subordinates. *See, e.g., id.; Inspector General Legislation*, 1 Op. O.L.C. 16, 17-18 (1977) (concurrent reporting requirements in inspector general legislation offends President's Article II power to direct); *see also Myers v. United States*, 272 U.S. 52, 163-64 (1926) ("Article II grants to the President the executive power of the Government, *i.e.*, the general administrative control of those executing the laws ...."); *Congress Construction Corp. v. United States*, 314 F.2d 527, 530-32 (Ct. Cl.), *cert. denied*, 375 U.S. 817 (1963). The above-referenced reporting provisions of the statute would involve both of these infirmities if the Commission were treated as an executive branch agency.[6] In addition, this Office has expressed the view that provision of advice and recommendations to the executive branch is an executive function, *The President's Power to Remove Members of the Federal Council on the Aging*, 5 Op. O.L.C. 337, 343 (1981), and therefore congressional appointment of those performing such a function would raise constitutional questions. *See* Letter for Alexander H. Platt, General Counsel, National Economic Commission, from Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel (June 22, 1988).[7]

Against the background of such constitutional questions we are obliged to "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932). *See also International Ass'n of Machinists v. Street*, 367 U.S.

---

[6] Although the Department of Justice has narrowly interpreted such broadly worded provisions in statutes unquestionably applying to executive branch agencies in the past to avoid raising these constitutional issues, *see, e.g.*, 41 Op. Att'y Gen. 507, 525 (1960), 6 Op. O.L.C. at 643, it would be anomalous to so construe the reporting provisions of this statute, where the basis for such a construction — the applicability of such provisions to an executive branch entity — is itself in dispute.

[7] The fact that a majority of its members are appointed by the President, although of some significance, is not in our view dispositive of the Commission's status, particularly where, as in this case, three of the President's four appointees are to be "appointed on the basis of recommendations made by" representatives of railroad employers, railroad employees, and commuter railroads, respectively. § 9033(c)(1)(A)(i)-(iii). The remaining Presidential appointee is to be appointed from among "members of the public." § 9033(c)(1)(A)(iv). *Cf.* § 9033(c)(1)(B) (Speaker's appointee from among members of the public); § 9033(c)(1)(C) (President pro tempore's appointee from among members of the public); § 9033(c)(1)(D) (Comptroller General's appointee from among members of the public with expertise in retirement systems and pension plans). We express no opinion concerning the validity of these appointment provisions.

740, 749-50 (1961); *Ashwander v. TVA*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring). In our view, it is reasonable to construe the two reporting provisions as contemplating that the Commission's report would be prepared principally for Congress' benefit, with the President as an incidental recipient. The statute's detailed reporting provision makes no reference to the President and expressly states that the Commission is to submit a report of its findings, conclusion, and recommendations "to the *Congress*," including, inter alia, "any other matters ... necessary, appropriate, or useful to the *Congress*." § 9033(b) (emphasis added). *Cf.* 31 U.S.C. § 719(a) (Comptroller General, a legislative officer, is required to provide Congress with annual report but must also provide it to President upon his request); *see generally Bowsher v. Synar*, 478 U.S. at 745-46 (Steven J., concurring) (Comptroller General's responsibilities to executive branch, including responsibility to provide President with reports upon request, do not prevent his being characterized as legislative officer); *Gannett News Service, Inc. v. Native Hawaiians Study Comm'n*, No. 82-0163 (D.D.C. June 1, 1982) (for purposes of Federal Advisory Committee Act, Native Hawaiians Study Commission advisory to Congress, not the President, although both receive copy of final factual report); *Applicability of the Federal Advisory Committee Act to the Native Hawaiians Study Commission*, 6 Op. O.L.C. 39, 41 (1982) ("That the President is to receive a copy of the [Native Hawaiians Study Commission] study, perhaps simply as a courtesy or for his general information, does not mean the study was intended to 'advise' him [for purposes of the Federal Advisory Committee Act].").

Moreover, most of the factors to be considered by the Commission in preparing its report relate to future legislation rather than nonlegislative purposes such as assisting the executive branch in its administration of existing programs.[8] These features of the bill strongly suggest that Congress created the Commission primarily to assist it, rather than the President, in considering these issues.[9] Because such a construction

---

[8] This conclusion is also consistent with the sparse legislative history of the provision, which notes the Commission role as advisor to the Congress. *See* 134 Cong. Rec. 14,647 (1988) (statement of Rep. Whittaker) ("The Commission can pave the way for a comprehensive, consensus approach to needed reforms, and can give the Congress the benefit of a studied, analytical approach to the problem . ").

[9] Our conclusion is supported by the fact that Congress has in the recent past created other commissions to assist it in legislating in this area. *See* Pub L. No. 91-377, § 7, 84 Stat. 791, 792-94 (1970) (creating Commission on Railroad Retirement comprised of three Presidential and two congressional appointees to "recommend[] to the Congress ... changes in [the] . benefits thereunder;" its final report was to be submitted to Congress and the President), Pub L. No. 92-460, § 6, 86 Stat. 765, 767 (1972) (requiring representatives of railway labor and management to submit to congressional committees and the Railroad Retirement Board a report containing joint recommendations); Pub. L. No. 93-69, § 107, 87 Stat. 162, 165 (1973) (requiring representatives of railway labor and management to submit to congressional committees a report containing "joint recommendations for restructuring the railroad retirement system ... [which] shall be . in the form of a draft bill"); Pub L No. 98-76, § 504, 97 Stat. 411, 441-42 (1983) (codified at 45 U S C § 362) (creating Railroad Unemployment Compensation Committee consisting of representatives of railway labor and management and the public, to submit "a report to the Congress concerning recommendations")

avoids the constitutional problems and is "not only 'fairly possible' but entirely reasonable," *Machinists v. Street*, 367 U.S. at 750, we are constrained to adopt it in this instance.[10]

## Conclusion

Under these circumstances, we conclude that the Commission is not part of the executive branch of the government for the purposes as to which you have inquired. Consequently, we are without authority to advise the Commission regarding the obligations of its members under whatever conflicts laws may apply to them. *See* 28 U.S.C. §§ 511-513. We suggest that you consult with the responsible ethics counsels of the House of Representatives and the Senate in this regard.[11]

LYNDA GUILD SIMPSON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[10] The statute's housekeeping provisions appear to be of limited value in assessing Congress' intent. The General Services Administration, an agency within the executive branch, is directed to provide the Commission with administrative support services on a reimbursable basis, § 9033(e)(3), and federal agencies are authorized to provide personnel and information to the Commission. §§ 9033(d)(4), 9033(e)(1) In addition, the Commission is authorized to use the United States mails "in the same manner and under the same conditions as other departments and agencies of the United States." § 9033(e)(2). The Chairman of the Commission is also authorized, subject to some limitations, to procure temporary and intermittent services under 5 U S C. § 3109(b), an authority permanently available to specified agencies in all three branches of the government § 9033(d)(3). *See also* 5 U S.C § 5721(1) (defining "agency" for purposes of, inter alia, 5 U.S C § 3109 as an executive agency, military department, federal court or the Administrative Office of the United State Courts, the Library of Congress, the Botanic Garden, the Government Printing Office, or the District of Columbia Government) We regard these provisions as of limited relevance to the question before us.

[11] We are aware that other agencies within the executive branch have considered the Commission's status for purposes of the Federal Advisory Committee Act ("FACA"), 5 U S C. app. §§ 1-15, and of the Commission's funding. We do not regard either the Commission's unilateral action in filing a charter with the General Services Administration pursuant to FACA or the Commission's source of funding as necessarily reliable indicia of Congress' intent concerning the Commission's status within the government for purposes of the conflicts-of-interest and disclosure laws This office has suggested that the National Economic Commission, which was expressly made subject to FACA by the Congress, was nevertheless not a part of the executive branch, *see* Letter for Alexander W. Platt, General Counsel, National Economic Commission, from Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel (June 22, 1988) Similarly, although an agency's source of funding may sometimes be indicative of Congress' intentions as to its status, *see* 6 Op. O L C at 41 (provision funding a commission from Senate's contingent fund evidences intent that it advise Congress, not the President), the Commission's source of funding does not support such an inference The Commission's Fiscal Year 1989 appropriation, the first funding provided for the Commission, was contained in title IV, the "Related Agencies" portion of the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Act, 1989, Pub. L No. 100-436, 102 Stat. 1680, 1709, while the President's Fiscal Year 1990 budget included the Commission's budget proposal in the legislative branch appropriation, together with such entities as the Copyright Royalty Tribunal and the General Accounting Office. Budget of the United States Government, Fiscal Year 1990 — Appendix, at I-A25, I-A24, I-A20 (1989). Even if the contemporaneous legislative source of an agency's funding were indicative of Congress' intent as to its status either as a general matter or as regards applicable conflicts-of-interest or disclosure laws, moreover, inferences concerning Congress' intent in creating the Commission in December 1987 are less reliably drawn from funding enactments in 1988 and later. *See generally Consumer Prod Safety Comm'n v GTE Sylvania, Inc.*, 447 U S. 102, 117-18 & n.13 (1980)