Justice Scalia,
concurring.
I agree with the Court’s interpretation of our Article III precedents, and I accordingly join its opinion. I adhere to my view, however, that — our contrary precedents notwithstanding — “a matter of public rights ... must at a minimum arise between the government and others,” Granfinanciera, S. A. v. Nordberg, 492 U. S. 33, 65 (1989).(Scalia, J., concurring in part and concurring in judgment) (internal quotation marks omitted).
*504 The sheer surfeit of factors that the Court was required to consider in this case should arouse the suspicion that something is seriously amiss with our jurisprudence in this area. I count at least seven different reasons given in the Court’s opinion for concluding that an Article III judge was required to adjudicate this lawsuit: that it was one “under state common law” which was “not a matter that can be pursued only by grace of the other branches,” ante, at 493; that it was “not ‘completely dependent upon’ adjudication of a claim created by federal law,” ibid.; that “Pierce did not truly consent to resolution of Vickie’s claim in the bankruptcy court proceedings,” ibid.; that “the asserted authority to decide Vickie’s claim is not limited to a ‘particularized area of the law,’” ibid.; that “there was never any reason to believe that the process of adjudicating Pierce’s proof of claim would necessarily resolve Vickie’s counterclaim,” ante, at 497; that the trustee was not “asserting a right of recovery created by federal bankruptcy law,” ante, at 498; and that the Bankruptcy Judge “ha[d] the power to enter ‘appropriate orders and judgments’ — including final judgments— subject to review only if a party chooses to appeal,” ante, at 500.
Apart from their sheer numerosity, the more fundamental flaw in the many tests suggested by our jurisprudence is that they have nothing to do with the text or tradition of Article III. For example, Article III gives no indication that state-law claims have preferential entitlement to an Article III judge; nor does it make pertinent the extent to which the area of the law is “particularized.” The multifactors relied upon today seem to have entered our jurisprudence almost randomly.
Leaving aside certain adjudications by federal administrative agencies, which are governed (for better or worse) by our landmark decision in Crowell v. Benson, 285 U. S. 22 (1932), in my view an Article III judge is required in all federal adjudications, unless there is a firmly established his *505 torical practice to the contrary. For that reason — and not because of some intuitive balancing of benefits and harms— I agree that Article III judges are not required in the context of territorial courts, courts-martial, or true “public rights” cases. See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U. S. 50, 71 (1982) (plurality opinion). Perhaps historical practice permits non-Article III judges to process claims against the bankruptcy estate, see, e.g., Plank, Why Bankruptcy Judges Need Not, a.nd Should Not, Be Article III Judges, 72 Am. Bankr. L. J. 567, 607-609 (1998); the subject has not been briefed, and so I state no position on the matter. But Vickie points to no historical practice that authorizes a non-Article III judge to adjudicate a counterclaim of the sort at issue here.